HENRY E. SHULER *et al.* v. ANGELINE LASH-HORN *et al.*

No. 13,013.    (74 Pac. 264.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Authority upon Review.* In a proceeding in error from a district court, this court has no authority to make findings of fact or to canvass the evidence for that purpose. Its function is to review alleged errors.

2. FINDINGS OF FACT—*Duty of Trial Court.* Upon the trial of a question of fact by the district court, it is its duty, upon request, to find the material facts established by the evidence, so that exceptions may be taken to its views of the law involved in the trial.

Shuler v. Lashhorn.

Error in this respect will not be presumed, but must be affirmatively shown.

3. ——— *Request and Refusal—New Trial.* If, upon the trial of a question of fact by the district court, material facts have been proved but not found, the district court should be requested, before any motion for a new trial, to modify the findings made to include the additional facts, or to make further findings covering such facts; and only in the event of a refusal of the court to make the correction or to supply the omission does ground for a new trial exist.

4. ——— *Presumption upon Review.* If, upon the trial of a question of fact by the district court, findings of facts are made, and such findings are not assailed in the district court as incomplete or incomprehensive, it will be presumed by this court that they embrace all the facts of the controvesy established by the proof.

5. ——— *Assignments of Error.* Assignments of error involving radical assumptions of fact not embraced in the special findings of fact made by the trial court will not be considered.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed November 7, 1903. Affirmed.

*E. E. Chesney*, for plaintiffs in error.

*Rossington, Smith & Histed*, for defendants in error.

The opinion of the court was delivered by

BURCH, J.: The petition in this action was in the usual form for the recovery of specific real property with damages for its detention. The answer was a general denial. Upon a final trial before the court special findings of fact and conclusions of law were made. A motion for a new trial, duly filed, was overruled, and judgment was entered pursuant to the conclusions of law for the plaintiffs. The defendants, Henry E. Shuler and wife, prosecute error to this court.

The findings of fact and conclusions of law were as follows :

"1. On April 8, 1879, Asa Shuler purchased the property described in plaintiff's petition, and became the owner thereof by warranty deed from George Renick, a widower.

"2. At the time of the purchase of this property by Asa Shuler a verbal arrangement and agreement was had between Asa Shuler and his brother, Mandes Shuler, by which it was agreed that Mandes Shuler should occupy the land in controversy as a home for himself and family. Mandes Shuler and family moved upon said land under this arrangement and verbal agreement in the spring of 1879. It was further verbally arranged and understood between Asa Shuler and Mandes Shuler that Asa Shuler was to furnish Mandes Shuler the necessary money to erect a dwelling-house and stable upon the land in controversy ; and Mandes Shuler was to pay the taxes upon the land and occupy it free of rent. Mandes Shuler was to repay to Asa Shuler the amount of money so advanced for the building of said house and stable upon said land, and upon his doing so Asa Shuler was to convey to Mandes Shuler that part of the property in controversy which is southeast of the Shunganunga creek. Under this arrangement and understanding Asa Shuler furnished Mandes Shuler $1000 to erect a dwelling-house and stable upon said land.

"Mandes Shuler has never repaid or offered to repay Asa Shuler the amount of money so advanced to him by Asa Shuler for the building of said house and stable upon said property.

"3. In 1887 Mandes Shuler left the land in controversy and moved to California where he has ever since remained and now resides, with no intention or purpose of returning to Kansas.

"4. Mandes Shuler and his two sons, Frank Shuler and Henry E. Shuler, occupied and farmed the land in controversy during the year 1886 ; and during the year 1887 Henry E. Shuler occupied and farmed said

land as the tenant of Mandes Shuler, agreeing to pay therefor $300 as rent, all taxes upon the property, and to support Mandes Shuler.

"5. The defendant, Henry Shuler, has not contributed anything towards the support of Mandes Shuler since said Mandes Shuler left said farm in 1887.

"6. Mandes Shuler does not claim any interest in or to the property in controversy.

"7. The defendant, Henry E. Shuler, has occupied the land in controversy by himself and tenants since Mandes Shuler left the same and went to California. Said Henry E. Shuler was married in 1889, since which time both he and his wife have lived upon said land.

"8. Mandes Shuler has never assigned or transferred to Henry E. Shuler any claim that he may have had upon the premises in controversy under and by virtue of any agreement between himself and Asa Shuler.

"9. Asa Shuler died testate at Hamilton, Ohio, in May, 1895, the owner of the property in controversy. Under and by virtue of the last will and testament of said Asa Shuler, Angeline Lashor, Charles A. Shuler, William B. Shuler, Ella Shuler, Doron and Mamie Shuler became the owners of said property in controversy.

"10. On the 29th day of May, 1896, Mary A. Shuler, widow of Asa Shuler, deceased; William B. Shuler and Luella Shuler, his wife; and Charles A. Shuler and Susan C. Shuler, his wife, conveyed to the plaintiffs all of their interest in and to the property in controversy.

"11. During the time Henry E. Shuler occupied said premises in controversy he has leased portions thereof to other parties.

"12. From 1887 to 1893 the defendant, Henry E. Shuler, paid the taxes upon said land, taking receipts therefor in the name of Mandes Shuler.

"13. Asa Shuler visited the defendants, Henry E. Shuler and wife, residing upon the premises in controversy from once to twice a year covering a period

of several years prior to his death, and on several occasions expressed an intention of conveying the property in controversy to defendant Henry E. Shuler or to him and his wife, but no definite agreement to that effect, either oral or otherwise, was ever entered into between Asa Shuler and these defendants; and the court is unable to determine at what time or upon what conveyance was to be made. No conveyance was ever made and no writing executed to show the purpose or intention on the part of Asa Shuler.

"14. No demand was made by Asa Shuler upon defendant, Henry E. Shuler or his wife, during the time they occupied said land, but Asa Shuler was given to understand that defendant, Henry E. Shuler, was paying the taxes upon the land in controversy.

"15. The defendant, Henry E. Shuler, by words and acts, recognized the title of this property in controversy to be in Asa Shuler up to the time of his death.

"16. After the death of Asa Shuler, defendant, Henry E. Shuler, recognized the plaintiffs and their immediate grantors as the owners of the property in controversy both by his acts and declarations.

"17. The rental value of the land in controversy for the three years immediately prior to the commencement of this suit was $900 per year.

"18. The plaintiffs are now and were at the time of the commencement of this suit the owners of, and entitled to, the possession of the property in controversy.

"19. During the time Henry E. Shuler occupied said premises he made some improvements upon the same by repairing the house and building a fence, aggregating in the neighborhood of $2000 in value. But the rental value of the premises during the time he occupied it free of rent largely exceeded any improvements placed thereon by him."

### CONCLUSIONS OF LAW.

"1. That the plaintiffs are the owners of and entitled to the possession of the property described in their petition.

"2. That plaintiffs are entitled to judgment against Henry E. Shuler for $2700."

These findings do not show that Asa Shuler ever persuaded or induced Henry E. Shuler to abandon his home and make a new one, or to abandon any chosen occupation, employment, or course of life, and take up another. They do not show that Henry E. Shuler ever took possession of the land in controversy, or ever returned to it after an absence, through any inducement, persuasion, request or importunity of Asa Shuler. They do not show that Henry E. Shuler has spent the flower of his days, the prime of his manhood, or any money, or that his wife has spent any money, in improving the land in controversy, on the faith of any promise or agreement whatever that it would belong to them or either of them. They do not show that Henry E. Shuler was ignorant of his rights, or that he misapprehended them, when by words and acts he recognized the title of the property in controversy to be in Asa Shuler up to the time of his death, or when, after the death of Asa Shuler, he recognized the plaintiffs and their immediate grantors to be the owners of the property both by his acts and by his declarations. They do not show the "factum" of any contract whatever between Asa Shuler and Henry E. Shuler relating to the title to the land, but they expressly state that no such agreement, either oral or written, ever existed. Although not found to be true by the court the attorney for plaintiffs in error assumes all these things, and some others, to be es-

tablished facts, and to be so material to the case as to require a reversal of the judgment.

At least seven of the specifications of error are based upon matters suggested by fragments of evidence excluded from the findings of fact, but treated as of controling importance. Forty-six of the fifty-three paragraphs of the brief supposed to be devoted to a statement of essential facts are occupied with retailing specific items of evidence as if they had been found by the court, while the ultimate facts embodied in the findings are ignored. Under these circumstances, in order to arrive at a decision, it is necessary to determine how far, if at all, the findings of fact are conclusive.

This court has no authority to make findings of fact or to canvas evidence for that purpose. Its function is to review alleged errors. When the district court was requested to make findings of fact it was its duty to find the material facts established by the evidence so that exceptions might be taken to its views of the law involved in the trial. (Gen. Stat. 1901, § 4737.) Error in this respect will not be presumed but must be affirmatively shown. In order to convict the trial court of error its judgment must have been challenged upon the particular matter in debate.

"Of course the court is not bound to make special findings concerning immaterial facts, nor is the court bound to find the material facts in any greater detail than is really necessary for the correct decision by a higher court of the questions of law involved in the case . . . And of course, where the court attempts to make special findings, as requested by a party, and inadvertently fails to make a special finding upon some particular matter in controversy, or makes such finding in too general terms, the court does not thereby commit substantial error, unless its attention is first called to the omission to find, or to the defective find-

ing, and it then fails or refuses to correct the same." (*Briggs v. Eggan*, 17 Kan. 589, 591.)

"If the plaintiff was not satisfied with the findings of fact, he should have asked the trial court to make further findings, or modify those made." (*Cowling v. Greenleaf*, 33 Kan. 570.)

Such an application to the court should not be delayed until the motion for a new trial. If material facts have been proved, but not found, the wrong done should be remedied by requiring a finding and thereby obviating the necessity of any new trial; and only in the event of a refusal of the court to make the correction, or to supply the omission, does ground for a new trial exist.

In this case no question has been raised, either in the trial court or in this court, as to the completeness or comprehensiveness of the findings of fact. No motion was made for the modification of any finding so as to include additional facts, and no request was made for any further or additional findings, and since no rulings upon those subjects were demanded, no errors in those respects can be alleged. Therefore, the plaintiffs in error are precluded from contending that the findings made do not embrace all the essential facts of the controversy established by the proof, and this court is precluded from considering any facts not found by the trial court. In view of the foregoing conclusions, specifications of error numbered 2, 3, 5, 6, 7, 8, and 33, all involving radical assumptions of fact not embraced in the findings, cannot be considered.

The first specification makes an attack upon a conclusion of law not found among those returned by the court or pointed out as occurring elsewhere in the proceedings. While the question may be interesting, no reason appears for discussing it.

The fourth specification relates to the exclusion of evidence. Upon direct examination Henry E. Shuler was interrogated regarding a communication had personally with his deceased uncle, Asa Shuler, with the following result:

"Ques. Did you see your uncle at Wichita? Ans. Yes sir.

"Q. Did you have any conversation with your uncle at Wichita? A. I did, yes sir.

"Q. Was it in reference to this place? A. Yes sir.

"Q. Was it in reference to your going back to the place? Counsel for the plaintiffs objected to the question as incompetent, irrelevant and immaterial. The court sustained the objection; to which ruling of the court the defendant duly excepted."

It is now asserted with much vehemence that this conversation would have cleared up all doubt as to Henry E. Shuler's right to the land. If so, the witness should have been asked to state the conversation. The question, "Was it in reference to your going back to the place?" sufficiently established the bearing of the conversation upon the subject-matter of the suit to make it admissible if otherwise proper, and if counsel frankly intended to offer it no subterfuge was required. Conclusions of the witness as to the bearing of the conversation were not legal evidence, and since no offer of the conversation itself was made no error appears.

The ninth specification of error to the effect that the exemplification of the will of Asa Shuler was not properly authenticated is trivial. Both a clerk's certificate and a presiding judge's certificate appear.

The argument upon specification 10 assumes that Henry E. Shuler was a vendee of the land by virtue of an oral promise. The court specially found otherwise.

The eleventh specification relates to evidence excluded.   Henry E. Shuler gave testimony regarding a conversation between his wife and Asa Shuler held in his presence, as follows :

"Ques.  What did he say to Mrs. Shuler there? Ans.   Why, he wanted to know why we did n't have another kitchen or a larger one or one out more by itself—we were a little crowded for room—and my wife said we were thinking of building a kitchen, but had n't really been able to, and did n't know whether we really ought to or not, and he went over the same thing again.   He says, 'Go ahead, fix it up to suit yourself; build whatever you want to ; it is yours anyway.'

"Counsel for the plaintiffs objected to the question and answer as incompetent, irrelevant, and immaterial, and because the witness is not competent to testify. The court sustained the objection, to which ruling of the court the defendants duly excepted."

If it be conceded that the answer should have been allowed to stand, no prejudicial error was committed. It will be noted the witness stated, "He went over the same thing again."   Against objection the witness had just been allowed to testify to a conversation between his wife and Asa Shuler in which almost identical language was used in connection with the subject of building a bow window to the house, and without objection the witness was immediately afterward allowed to testify to another conversation between the same parties of precisely similar import in connection with a proposition to remove a wall and rearrange the rooms.   A subsequent motion to strike out this testimony was overruled.   If the court believed Asa Shuler made the statements attributed to him at all, it made little difference whether they were made three times or only twice.

By the twelfth specification it is charged that the

district court erred in sustaining an objection to this question put to Henry E. Shuler: "When you went on the place in 1886, what, if anything, did your father say to you with reference to coming on the place?" No attempt is made to show how this conversation could bind Asa Shuler, and hence the plaintiffs in this action. Without this the ruling must stand.

The thirteenth specification makes the same asseveration of error as constituted the burden of the fourth, apparently in utter forgetfulness of the previous fulmination.

The fourteenth specification deals with the rejection of evidence. Henry E. Shuler went to Ohio at the time of Asa Shuler's funeral there. The court refused to permit him to answer the question, "At the time you went on there did you suppose the place had been deeded to you?" Later in the trial, however, Henry E. Shuler was examined minutely upon apparently every supposition he ever had relating to the title to the land, and given full opportunity to describe all his states of mind regarding it. Hence he could not have been harmed by the ruling challenged.

Specifications 15, 16, 17, 18, 19, and 20, complain of the cross-examination of Henry E. Shuler. The contention of the plaintiffs was that the defendants were opposing them with a clumsily contrived scheme to loot the estate of Asa Shuler. The widest latitude is always allowed in the cross-examination of a party suspected of fraudulent designs, and the discretion of the court in that respect was not abused in this case.

Specifications 21, 22, and 23, impugn the conduct of the trial court because certain letters from Henry E. Shuler's cousin to himself were excluded. No reasons are offered for overturning the judgment of

the trial court on this account, and none being obvious the ruling will not be disturbed.

Specifications numbered 24, 25, 26, 27, 28, 29, 30, and 31, challenge in various forms the findings of fact, the conclusions of law, and the correctness of the judgment rendered.   The findings respond to the issues, cover every fact essential to recovery by the plaintiffs, are all sustained by sufficient competent evidence, and are in harmony with the apparent weight of the evidence.   The conclusions of law are legitimate deductions from the facts found and the judgment follows as a necessary and inevitable consequence.   The motion for a new trial on the ground of newly-discovered evidence was substantially nothing more than an application for an opportunity to retry the case upon a different theory and was rightfully denied.   And since the decision of the trial court was consonant with the law and the facts it must be approved.

Only one specification of error remains—number 32—which is as follows :

"It was error in the trial court to fail to decree compensation and a lien both to Henry and his wife to secure the same before giving plaintiffs possession even if the evidence was insufficient to justify a decree for specific preformance."

Under the findings of fact Henry E. Shuler could scarcely have any claim for compensation or be awarded any lien and his situation needs no further consideration.   In specification 6 it was asserted, as in the one under discussion, that Mrs. Shuler should be allowed some equitable lien to reimburse her for advancements going to the improvement of the property before she could be ejected from it.   This plea was

45—67 KAN.

foreclosed by the following conduct of her counsel, exhibited at the trial of the cause :

"Mr. Histed : Does Mrs. Shuler disclaim any interest in or to any of this property ?

"Mr. Chesney : Just let me consult with my brother counsel a moment and I think we can settle that question for you in a minute. (Defendant's counsel withdraw from the court-room for consultation.)

"Mr. Chesney : In this case we fully disclaim every right except just such rights as a wife has by being a wife. She has no individual lien in any respect whatever for this money that she loaned him. We had expected to file a disclaimer as to that all along ; in other words, we have all along felt that she was improperly joined."

The judgment of the district court is affirmed.

All the Justices concurring.