No. 23,284.

A. R. LASLEY, *Appellee,* v. IRIS PENDLETON, *Appellant.*

SYLLABUS BY THE COURT.

SALE OF REAL ESTATE—*Supplemental Contract Not Performed by Purchaser—Not Enforceable.* The proceedings in an action to enforce payment of the price of real estate sold, examined, and *held,* the vendee was not entitled to the benefit of an unperformed supplemental contract giving him privilege to pay a reduced price within a limited time.

Appeal from Scott district court; ALBERT S. FOULKS, judge. Opinion filed July 9, 1921. Affirmed.

*J. D. Houston, C. H. Brooks, Willard Brooks,* all of Wichita, and *H. A. Russell,* of Scott City, for the appellant.

*R. D. Armstrong,* of Scott City, *William Easton Hutchison,* and *C. R. Hope,* both of Garden City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a vendor to enforce payment of the consideration stated in a contract to convey real estate. The vendee asserted right to perform by payment of the sum of $7,000 in cash. The judgment was that he execute a mortgage for $8,000, and he appeals.

The original contract was dated June 9, 1917, and was to be performed by September 1. The price was $16,000. The

terms were one-half cash to be paid by September 1, and one-half secured by mortgage. Pendleton was not able to perform, and on August 17, 1917, secured new terms by a contract known as the first supplemental contract. The contract thus supplemented was to be consummated by October 25, 1917. The cash payments were made before October 25, but the mortgage was not given. On July 3, 1918, a second supplemental contract was entered into, whereby Pendleton was granted sixty days' time in which to pay $7,000 in cash, instead of giving the mortgage for $8,000. Pendleton undertook to obtain the necessary funds from the Federal Land Bank at Wichita. Lasley himself was purchasing the land. His contract with Pendleton was to convey, or cause to be conveyed, and the abstracts were to show good title in the record owners. On July 30, 1917, the abstracts were delivered to Lasley, together with a certificate of his attorney that the title was good in the record owners. The contract was to be performed in the office of the First National Bank of Scott City. The original and supplemental contracts were deposited there, and Lasley delivered the abstracts to the bank. When Pendleton made application to the Federal Land Bank for a loan he obtained the abstracts from the Scott City Bank and took them to the Federal Land Bank. The Federal Land Bank required that some deeds be obtained, which were not procured until the sixty-day privilege granted by the second supplemental contract had expired. Lasley then refused to close the transaction according to that contract. Findings of fact and conclusions of law which were returned by the district court follow:

"FINDINGS OF FACT.

"1. The original contract between the plaintiff and the defendant was executed on the 9th day of June, 1917, and the first supplemental contract was executed on the 17th day of August, 1917, and the second supplemental contract was executed on the 3d day of July, 1918. By the terms of the first contract, plaintiff, A. R. Lasley, agreed to sell and convey to the defendant, Iris Pendleton, twelve hundred and eighty acres of land in Scott county, Kansas, for the consideration of $16,000, $8,000 to be paid at different times and in different amounts, the final payment of $6,000 to be made on the first day of September, 1917, at which time defendant was to

execute a mortgage on said land in favor of the plaintiff for $8,000 due in five years, with interest at six per cent per annum from date.

"2. Plaintiff agreed to furnish abstracts to said land showing good title in the record owners of said real estate, excepting nothing, and to complete the abstracts and deliver them to the defendant within thirty days, but the right to have the abstracts within thirty days was waived by the defendant.

"3. It was agreed in said contract that in case of default by second party, all prior payments should be forfeited and remain the property of the plaintiff.

"4. The first supplemental contract, dated August 17, 1917, provided that in consideration of the payment of $600 the plaintiff would extend the time in which the balance of the cash payments were to be made, the last cash payment to be made on or before the 25th day of November, 1917.

"5. The second supplemental contract dated July 3, 1918, provided that plaintiff was to deliver to defendants plaintiff's deed conveying the land in question to the defendant. Defendant agreed to make deed to plaintiff and place said deed in the bank until defendant had completed the payments of the purchase price of said real estate, but provided that if the payments were not made within sixty days said deed was to be delivered to the plaintiff.

"6. Defendant further agreed to pay all interest due on deferred payments and $7,000 in cash in sixty days from date of contract. It was further provided that in case payments were not made within the sixty days, then the parties were to be in the same position they were prior to the making of the said contract of July 3, 1918.

"7. At or before the time of the signing of the first supplemental contract there was some talk in the office of R. D. Armstrong, who drew said contract and who had examined the abstracts for plaintiff at the time plaintiff purchased the land in question, as to the titles and as to defendant accepting the opinion of R. D. Armstrong. At that time defendant expressed no intention of employing any other attorney to examine the abstracts, but he did not waive his right to do so. But on June 30, 1917, defendant wrote to R. D. Armstrong asking that the abstracts be sent to him, and on July 6, 1917,

R. D. Armstrong, in answer to said letter of June 30, 1917, wrote defendant that he, R. D. Armstrong, would finish the abstracts in a few days and have plaintiff forward the abstracts to the defendant. The defendant never fully understood what he was to get as abstracts, nor what Mr. Armstrong's connection with the abstracts was. He had these matters confused with those of 'Title and Trust Companies.'

"8. Mr. Armstrong finished the examination of the abstracts for plaintiff and gave his written opinion thereon on the 30th day of July, 1917. The abstracts were never delivered to the defendant by either the plaintiff or his attorney. The abstracts were first delivered to the defendant by Mr. Rector, at the bank in Scott City, Kan., just after the second supplemental contract was executed by the parties.

"9. The abstracts of title in the deal between plaintiff and Hawkins were prepared by Mr. Gibbons and were certified by him on the 22d day of May, 1917, and the 27th of July, 1917.

"10. Neither plaintiff nor defendant ever complied with the terms of the contract of July 3, 1918. Plaintiff failed to deliver deed to defendant as provided in said contract, and defendant failed to pay the cash within the sixty days, as provided in said contract.

"11. At no time within the sixty days provided for in said second supplemental contract did the abstracts show a compliance with the requirements of the Federal Land Bank.

"12. Neither party ever tendered performance of the terms of the second supplemental contract.

"13. The defendant in this action was in the service of the army of the United States from the 5th day of August, 1918, to the 4th day of September (December?), 1918.

"14. The plaintiff informed Mr. Rector, at the First National Bank at Scott City, Kansas, at some time prior to November 14, 1918, that he would not comply with the contract of July 3d, 1918, and on the 14th day of November, 1918, R. D. Armstrong notified defendant that Mr. Lasley had refused to comply with the terms of said contract.

"15. On May 3, 1919, defendant by letter signified his willingness to close the deal on the terms of supplemental contract on July 3, 1918, and on the 6th day of May, 1919, the plaintiff, in answer to the letter of the defendant of May 3,

1919, signified his willingness to close the deal on the same terms, and asked defendant to comply with the terms of the contract.

"16. In all matters done by R. D. Armstrong on the abstracts, which were necessary to be done to show title in the then record owners of the land, he was acting for the plaintiff either as his agent or attorney.

"17. The defendant made all of the cash payments according to the terms of the original and supplemental contracts excepting the last payment of $7,000 as provided in the supplemental contract of July 3, 1918. By the terms of said contract of July 3, 1918, plaintiff agreed to accept $7,000 in cash with the accrued interest, in lieu of the mortgage of $8,000 provided for in the original contracts.

"18. The $600 paid by defendant on the supplemental contract of August 17, 1917, was paid for the privilege of having the terms of the payments to be made by the defendant extended to later dates.

"19. The defendant failed to execute the mortgage on $8,000 as provided in the original and supplemental contracts, but this failure was excused by the plaintiff. Plaintiff desired to have the mortgage made to some person other than himself so that he might receive the proceeds of the mortgage and pay a commission due O. D. Card for furnishing a purchaser to the land and for the purpose of paying off the mortgages then on the land.

"20. Defendant took possession of the land in question, and put his brother, Charles E. Pendleton, in charge and possession of the same, and still holds such possession.

"21. Plaintiff made a mortgage on the real estate in the sum of $4,800, which has not been satisfied, but said mortgage was to be satisfied when the contract was finally carried out, out of the proceeds of the last payment.

"22. The release of the mortgage was sent to the bank at Scott City, Kansas, and held there by said bank for several months.

"23. The defendant at some time prior to the expiration of the sixty days provided for in the second supplemental contract asked Mr. Armstrong if it would make any difference with plaintiff if the requirements of the Federal Land Bank

Lasley v. Pendleton.

could not be complied with within the sixty days, and Mr. Armstrong said he thought it would make no difference with the plaintiff.

"24.  The defendant asked R. D. Armstrong to abstract the release of the mortgage and have it all ready to complete the abstracts when the release was filed for record, so the deal might be closed as speedily as possible, and Mr. Armstrong complied with this request of the defendant.

"25.  On the 5th day of September, 1917, plaintiff executed a warranty deed to the land in question to the defendant, and on or about the same date deposited the deed in the First National Bank at Scott City, Kansas.

"26.  The deeds from the Hawkins heirs were made to the defendant, the last of the deeds were secured on the 12th day of November, 1918, and recorded on the 14th day of November, 1918, and on said last date the abstracts were extended and certified to by R. D. Armstrong.

"27.  The three contracts referred to in these findings were all placed in escrow in the First National Bank of Scott City, Kansas.

"CONCLUSIONS OF LAW.

"*First*.  The court concludes as a matter of law that the first supplemental contract was not usurious, and that the six hundred dollars paid thereunder was for the purpose of securing an extension of the contract, and not as interest thereon.

"*Second*.  Defendant is not entitled to the benefit of the reduction of the one thousand dollars provided for in the second supplemental contract, for the reason that he failed to comply with the terms thereof.

"*Third*.  The defendant is entitled to the performance of the first supplemental contract, and the court orders that, upon the deposit by the plaintiff with the First National Bank of Scott City, Kansas, of abstracts of title showing merchantable title in said land in the grantors, with good and sufficient warranty deeds conveying title to said land to the defendant, the defendant shall, within thirty days after receiving notice of the deposit of said abstracts and deeds in said bank, make note and mortgage in favor of the plaintiff in the sum of $8,-000, said mortgage to be a first lien upon the land in question

upon the terms and conditions provided in the original and first supplemental contract."

A clerical error appears in finding No. 13. The word "September" should be "December." The 18th finding was based on Pendleton's testimony, and states the fact. The payment of $600 not being made, directly or indirectly, as interest for the use of money, the first conclusion of law is correct. Pendleton asserts that the 15th finding is incorrect, in stating that on May 6, 1919, Lasley, in response to an offer by Pendleton, signified a willingness to close the sale according to the terms of the second supplemental contract. The letter on which the finding is based is ambiguous. Whatever the proper interpretation of the letter may be, the finding is unimportant, because, if it be incorrect, the contract of July 3, 1918, was not reinstated, and if the finding be correct, the judgment does not depend upon it. Other findings are not criticized. It is said the court should have found as a fact that Lasley waived performance of the contract of July 3, 1918. No request for such a finding appears in the abstract, and the findings of the court, with the qualifications noted present the facts in the case. (*Shuler v. Lashhorn,* 67 Kan. 694, 74 Pac. 264.)

It is said that on the sixtieth day after July 3, 1918, certain obligations still existed on the part of Lasley, unfulfilled, which were concurrent conditions to Pendleton's obligation to pay $7,000. The only obligation which the second supplemental contract imposed on Lasley was to deliver his deed. His deed had been in the bank where the sale was to be consummated ever since September or October, 1917. While it was not in fact delivered by the bank or by Lasley to Pendleton, it was in the bank for Pendleton, whenever Pendleton should deposit his deed and pay his money. The condition of the second supplemental contract was that unless the $7,000 were paid within sixty days, the contract terminated. Lasley is claiming nothing under the second supplemental contract. Pendleton seeks to take advantage of it. If the obligations of vendor and vendee were concurrent, Pendleton has no standing to claim the benefit of a contract, no obligation of which he offered to fulfill, and when the sixty days elapsed without deposit of Pendleton's deed and without tender of Pendleton's money, the second supplemental contract was at an end.

It is said Lasley was in default respecting abstracts and respecting title. While the abstracts of title were not technically delivered to Pendleton according to the original contract, he entered into two supplemental contracts without investigating them. If Lasley were in default, the second supplemental contract was entered into with full knowledge of the fact. That contract made no reference to abstracts or to title. It bound Pendleton to pay within sixty days, or lose his privilege to pay in cash, and he necessarily acted at his own risk so far as abstracts were concerned. The abstracts of title are not in the record. The fact that some one who examined them for the Federal Land Bank required deeds from some heirs, does not indicate the title was not merchantable without the deeds, and there is no finding or evidence on which to rest a finding, that the title of the record owners was not good. Besides this, Pendleton entered into possession of the land, and still keeps possession—facts which prevent him from asserting invalidity of title against the vendor. (*Dunn v. Mills,* 70 Kan. 656, 79 Pac. 146; *Brown v. McCrie,* 77 Kan. 230, 94 Pac. 144; *Harrell v. Neef,* 80 Kan. 348, 102 Pac. 838; *Lane v. George,* 84 Kan. 823, 115 Pac. 589.)

It is said Lasley waived performance of the second supplemental contract within sixty days. Waiver must be predicated, if at all, on findings No. 16 and No. 23. Finding No. 16 is limited to work done on abstracts. It does not extend to voluntary efforts of Armstrong to comply with requirements of the Federal Land Bank respecting title, the matter which led Pendleton to delay consummation of the sale. There was no evidence on which to base a finding that Armstrong acted for Lasley in procuring the deeds called for by the Federal Land Bank, and there was no evidence that Armstrong had any authority from Lasley to waive payment within the sixty-day period. The 23d finding discloses nothing but an expression of Armstrong's personal opinion.

It is said Pendleton will suffer a forfeiture, abhorred in equity, unless he may settle on the basis of the second supplemental contract. All the second supplemental contract gave to Pendleton was opportunity to get a deed, by depositing a deed and by paying money within a strictly limited period. What he lost was opportunity, not the thousand dollars he

might have made by depositing his deed and tendering his money. A contention that the judgment violates the soldiers and sailors' civil relief act, is without merit.

The judgment of the district court is affirmed.