No. 24,761.

CHARLES PREWETT, *Appellant,* v. J. T. VAN PELT et al., *Appellees.*

SYLLABUS BY THE COURT.

OIL AND GAS LEASE—*Contract for Assignment of Lease—Specific Performance.* An oil and gas lease required the lessees to commence drilling a well by September 24. On September 2, the lessees agreed in writing to assign the lease within six days, the assignee to fulfill the covenants of the lease. The assignee acted on the agreement, and became entitled to the assignment on the 8th, but did nothing after the 8th toward drilling a well. On the 11th, the lessees assigned to another, who had notice of the assignee's contract, and who commenced drilling a well, afterwards completed, on the 14th. On the 15th, the assignee commenced an action for specific performance. *Held,* the plaintiff should recover, but should be charged with the proper cost of drilling the well.

Appeal from Anderson district court; HUGH MEANS, judge. Opinion filed December 8, 1923. Reversed.

A. R. Lamb, Clement A. Reed, both of Coffeyville, J. K. Bowman, and Noah L. Bowman, both of Garnett, for the appellant.

Travis Morse, of Iola, and C. W. Garrison, of Garnett, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to compel specific performance of a contract to assign an oil and gas lease. The plaintiff was defeated, and appeals.

Van Pelt and Johnson, who owned a seven-eighths interest in an oil and gas lease, agreed to assign six-eighths to Prewett, by written contract which reads as follows:

"This agreement, entered into this 2nd day of September, 1921, by and between J. T. Van Pelt and C. H. Johnson, of Colony, Kansas, parties of the first part, and Chas. Prewett, of Coffeyville, Kansas, party of the second part, witnesseth:

"That for and in consideration of the sum of one dollar and the meeting of the conditions and obligations in a certain oil and gas lease covering lot 34, block 3, in Graceland addition to the town of Colony, parties of the first part agree to assign six-eighths (⅝) interest in the oil and gas lease covering the above described property within six days from date. It is further agreed that, in case party of the second part drills a producing well on the above described premises, and the gas or oil is put into the Kansas Natural line, then parties of the first part agree to pay their proportionate part of the expense of putting same in. It is agreed and understood that parties of the first part assign six-eighths (⅝) interest of their seven-eighths (⅞) interest unto party of the second part. This contract made in triplicate, original held in escrow in First National Bank, and copy to each party thereto."

The material facts of the controversy were stated by the court in findings of fact which, with the conclusions derived therefrom, follow:

"FINDINGS.

"7. Prior to the time that the three individuals went to the bank [to have the contract drawn], there had been some discussion with reference to the time in which the plaintiff Prewett was to have his drilling rig upon the lease in question. While it was understood that the contract to be entered into would require him to have the rig on the lease within six days, yet it was also understood between the contracting parties that he would be unable to get his rig there within that time, and a limitation was to be inserted, with the understanding that he would get his rig on the lease as soon as possible, and in time to comply with the provisions contained in the lease which was being assigned, which provided that a well should be commenced on the land on or before September 24, 1921.

"8. After the signing of the agreement by the defendants Van Pelt and Johnson, the plaintiff went some place near Coffeyville and loaded his rig and sent it to the city of Coffeyville, where it arrived about September 8, and apparently the rig remained in the yards of Coffeyville until after September 24, 1921. The plaintiff Prewett did not attempt to take possession of and did nothing towards the drilling of a well on the lease in question on or before September 24, 1921.

"9. After the plaintiff's drilling rig arrived at Coffeyville, he apparently made no further effort to ship the same to Colony so as to enable him to begin the drilling of a well on the lease in question on or before September 24, 1921.

"11. About September 11, 1921, the defendants Van Pelt and Johnson sold the lease in question to the defendant J. B. Kirk, in consideration of the sum of $1,000. At the time Kirk purchased this lease, he had notice of the fact that the defendants Johnson and Van Pelt had already contracted for the sale of their interest in the lease to the plaintiff Prewett. He did not, however, have knowledge of the actual conditions of such contract.

"12. The defendant Kirk erected a drilling rig on the lease in question about September 14, 1921. This action was begun on September 15, 1921, on which date service was secured upon the defendant Johnson, and the defendant Kirk was served with summons about January 5, 1922. The plaintiff knew of Kirk's activity with respect to commencing a well on the lease in question about the time Kirk began work."

"CONCLUSIONS.

"3. The plaintiff was guilty of such laches as to bar him from any recovery in this action because of his failure to carry out the conditions imposed by the lease referred to in finding No. 10.

"4. The bringing of this action did not excuse the plaintiff from commencing or at least attempting to commence a well on the lease before September 24, 1921.

"5. The fact that the defendant Kirk began a well on the lease and that the plaintiff knew this fact, did not excuse the plaintiff from commencing or attempting to commence a well on the lease before September 24, 1921."

It will be observed the learned district court was of the opinion Prewett's obligation to comply with the terms of the lease by commencing to drill on or before September 24 required him to drill by that time, or to make contentious effort to do so, in opposition to the conduct of Van Pelt, Johnson, and Kirk.

Van Pelt and Johnson agreed to make the assignment within six days, and to do so notwithstanding Prewett could not get his drilling rig on the lot within that time. On September 8, the sixth day, Prewett got his drilling rig to Coffeyville, and was then entitled to his assignment. On the 11th, three days later, Van Pelt and Johnson ranged themselves as adversaries of Prewett, and disabled themselves from performing at all by assigning their entire interest in the

lease to Kirk. Kirk purchased with notice of the contract to sell to Prewett, and Kirk's occupation of the premises on the 14th, under his assignment, was a hostile act toward Prewett. There is no finding that, previous to the 11th or 14th, Prewett had abandoned the contract, or that because of delay in getting his rig out of Coffeyville it would have been impossible for him to begin drilling before the 24th. The facts found do not warrant an inference of either abandonment or impossibility of performance and, as indicated, the fault attributed to Prewett is that he did not strive to begin drilling by the 24th, notwithstanding what had occurred.

The consideration for the assignment to Prewett was that he would fulfill the covenants of the lease, including the covenant to commence a well by the 24th; and ordinarily a plaintiff who has not performed on his side may not have the benefit of the equitable remedy of specific performance. Likewise, ordinarily a plaintiff must have been ready, willing, and eager to perform at all times. A vendor, however, who prevents or obstructs or opposes or repudiates performance by his vendee is not in a position to interpose nonperformance, or delay in performance, as a bar to relief. A purchaser from the vendor, with notice of the vendee's rights, stands in the shoes of the vendor; and when performance is obstructed by adverse possession created by the vendor and a purchaser from him with notice, the vendee is not obliged to resort to self help. He may resort to equity, as Prewett promptly did on discovering Kirk's drilling rig on the premises.

Kirk's answer admitted he had drilled a gas well on the lot, and Prewett must still perform as near as may be. In the accounting which must follow a decree of specific performance against Kirk, the proper cost of drilling the well, and of otherwise complying with the covenants of the lease except as prescribed by the contract, should be charged to Prewett.

There is nothing else of importance in the case. The contract was not so uncertain as to be unenforceable. Although not signed by Prewett, the obligations of the contract became mutual when Prewett acted upon it. The subject of fraud in procuring the contract was disposed of by a special finding sustained by sufficient evidence. The finding is that when Kirk purchased he had notice that Van Pelt and Johnson had already contracted to sell to Prewett. That was notice enough to prevent Kirk from being an innocent purchaser. The issue of abandonment of the contract by plaintiff

The State, ex rel., v. City of Independence.

was raised by the pleadings. Besides what has already been said, it may be observed defendants made no request for a finding on that subject, and it is now out of the case. (*Shuler v. Lashhorn,* 67 Kan. 694, 74 Pac. 264.)

The judgment of the district court is reversed, and the cause is remanded with direction to proceed in accordance with the views expressed in the foregoing opinion.