No. 26,141.

CHARLES PREWETT, *Appellee and Appellant*, v. (J. T. VAN PELT, C. H. JOHNSON, MRS. C. H. JOHNSON, THE LEHIGH PORTLAND CEMENT COMPANY, and THE CITY OF IOLA, *Appellees*) J. B. KIRK and THE J. B. KIRK GAS AND SMELTING COMPANY, *Appellants and Appellees*.

SYLLABUS BY THE COURT.

1. MINES AND MINERALS,—*Oil and Gas Lease—Lease Worked Under Partial Assignment—Liability to Coöwner.* ᶜTwo persons were the owners of an oil and gas lease which required development. One of them went upon the leased premises and drilled a well. He made a claim in good faith to be the owner of the entire lease, in which claim he was defeated upon a trial. In an action by his coöwner against him for an accounting, it is held that he is not liable to his coöwner for treble damages as for trespass under R. S. 21-2435.

2. SAME—*Market Value—How Ascertained.* The market value of natural gas at the well is not necessarily controlled by a price paid to one person, and in this case it is properly found upon a consideration of all the evidence produced pertaining to that question.

3. SAME—*Joint Owners of Lease—Accounting—Unliquidated Demand—Interest.* In an accounting between joint owners of an oil and gas lease the controverted questions concerning the liability of defendant, the amount of gas taken from the well, and its market value, were such as to make plaintiff's claim against defendant an unliquidated demand, so that the interest on the sum found due plaintiff would begin at the time of judgment.

4. SAME—*Sale of Gas—Disputed Ownership—Liability of Innocent Consumer for Conversion.* The ordinary consumer of gas buying it from a distributing and selling company, who has no actual or constructive notice of a controversy between joint owners of a lease concerning the gas from a specific well, is not liable for conversion to the successful claimant of an interest in the gas from such well.

5. SAME—*Gas—Measure of Value at Well.* In determining the value of gas at a well, the court properly refused to allow the cost of constructing and operating a pipe line which had been constructed from the gas field and was in operation before the well in question was drilled.

6. SAME—*Joint Owners of Lease—Accounting—Measure of Recovery.* In an accounting between coöwners of an oil and gas lease, where defendant, who had drilled and operated the well, set up in his answer the total cubic feet of gas produced from the well, the court did not err by refusing to determine defendant's liability to plaintiff upon a computation of the size of the tract of land covered by the lease, the thickness of the gas-producing sand, and the pressure of the gas.

7. TRIAL—*Conflicting Evidence.* Other findings, determined by the trial court on conflicting evidence, are not disturbed.

Appeal from Anderson district court; HUGH MEANS, judge. Opinion filed May 9, 1925. Affirmed.

*F. J. Oyler, Travis Morse,* both of Iola, *Hugo T. Wedell,* and *John J. Jones,* both of Chanute, for appellants and appellees J. B. Kirk and The J. B. Kirk Gas and Smelting Company.

*A. R. Lamb, Clement A. Reed,* both of Coffeyville, *J. K. Bowman,* and *Noah L. Bowman,* both of Garnett, for appellee and appellant Charles Prewett. *A. R. Enfield,* of Iola, for appellees the City of Iola and The Lehigh Portland Cement Company.

The opinion of the court was delivered by

HARVEY, J.: This is a suit for the specific performance of a contract to purchase an oil and gas lease, and for an accounting. The petition upon which the case was first tried contained three causes of action. The first set up plaintiff's contract for the purchase of a six-eighths interest in an oil and gas lease and the performance of plaintiff's part of the agreement, but that the vendors had sold the entire lease to J. B. Kirk, who purchased with knowledge of plaintiff's contract and interest, and plaintiff prayed that the terms of his contract of purchase should be specifically performed. The second set out that J. B. Kirk had gone into possession of the premises, claiming to be the sole owner of it, and plaintiff prayed that he be put into possession. The third averred that Kirk had gone into possession of the premises and drilled a well and obtained a producing gas well thereon, and converted the gas to his own use, and prayed for an accounting of the gas produced from the well. Kirk's answer admitted that he had drilled a well, but averred he had purchased the lease, was entitled to possession and the products in the well, to the exclusion of plaintiff. Upon a trial, judgment was rendered for defendant. Upon an appeal to this court the judgment of the court below was reversed (114 Kan. 833, 220 Pac. 1045). Thereafter plaintiff filed a supplemental petition alleging that after the defendant Kirk went into possession of the premises and drilled a well thereon, the defendant, the J. B. Kirk Gas and Smelting Company, constructed a pipe line to the premises and attached the same to the well and took all the available gas therefrom and distributed the same through its pipe lines, and sold the gas to the Lehigh Portland Cement Company and the city of Iola. These parties were all made defendants, and plaintiff prayed judgment against the defendant Kirk and each of the three corporation defendants "for the value of the gas received by said defendants and belonging to the plain-

Prewett v. Van Pelt.

tiff." Kirk filed a supplemental answer in which he averred that he had drilled a well upon the premises at an actual cost of $1,790.85; that the well had a capacity and produced gas amounting to a total of 399,003,994 cubic feet; that the market for gas was to the extent of only two per cent of that produced at 15 cents per thousand, and that the fair market value of plaintiff's interest in the lease was at no time worth in excess of $897.75, and he prayed for the difference between that and the cost of drilling the well, $893.10, and for general relief. The J. B. Kirk Gas and Smelting Company filed an answer to the supplemental petition and referred to and adopted the answer of J. B. Kirk. The city of Iola and the Lehigh Portland Cement Company filed answer denying liability, claiming that they had bought without notice of plaintiff's claim.

Upon the trial, the court made findings of fact and conclusions of law as follows:

### "FINDINGS OF FACT.

"(Unless otherwise specified, the term 'defendants' used herein, means J. B. Kirk and The J. B. Kirk Gas and Smelting Company.)

#### I.

"The defendants took from the well in controversy in this case 399,000,496 cubic feet of gas, of which the plaintiff is entitled to six-eighths of the seven-eighths, or 261,846,438 cubic feet. The reasonable market value of said gas was 15 cents per 1,000 cubic feet. The defendants paid persons other than the plaintiff who were interested in the gas coming from said well, 16 cents per 1,000 cubic feet. The installation of the well cost the defendant $1,750.00.

#### II.

"After the well had been drilled in by the defendants a meter was placed thereon and a by-pass, that is to say, a pipe around the meter, was installed. No appreciable amount of gas, however, was taken by the defendants from said well that did not pass through the meter. If gas was allowed to flow through the meter and the by-pass at the same time, something more than forty per cent of such gas would escape through the by-pass and eventually find its way into the pipe lines of the defendant.

#### III.

"The defendants are engaged among other things, in marketing gas produced from the various wells through a pipe line system of its own, and the gas produced from the well in litigation was mingled with the gas produced from other wells and such mingled gas was sold in considerable quantities to the defendants, the City of Iola and The Lehigh Portland Cement Company, the amount received by each of said defendants being considerably in excess of the total amount produced from the well in question, and they have paid for the same.

IV.

"The Kansas Natural furnished about the only general market there was at Colony for gas produced from wells in the Colony field, of which the well in question constituted one. The Kansas Natural took only a small portion of the gas produced from the wells in the Colony field, ·probably less than two per cent of their possible production.

V.

"The pipe line system of the defendant was laid at a considerable cost, and it was because of the fact that they owned this system that they were able to receive and market all of the gas from the well in question. The pipe line system was in operation prior to the drilling of this well.

"CONCLUSIONS.

"1. The defendants were not trespassers under § 21-2435, Revised Statutes, and the plaintiff is not entitled to judgment for treble the value of the gas taken.

"2. The plaintiff is not entitled to any judgment at this time against the defendant, The City of Iola or The Lehigh Portland Cement Company.

"3. The defendants are not entitled to have off-set against the value of the gas taken the cost or any part thereof of installing its pipe line system.

"4. There should be a judgment for specific conveyance and for the value of the gas taken, less $1,750 or $37,526.97."

Judgment was rendered accordingly. Both the plaintiff and the defendants against whom judgment was rendered filed motions for a new trial and both have appealed.

Plaintiff contends he should have had treble damages because of the trespass of Kirk in going upon this lot and drilling. (R. S. 21-2435.) This contention cannot be sustained. Neither the original petition nor the supplemental petition charged Kirk with being a trespasser, nor did plaintiff ask for triple damages. In fact, he alleged Kirk is owner of one-eighth interest in the lease and plaintiff owner of six-eighths. Being joint owners, as lessees of the lease, it was not only the right but the duty, both of plaintiff and of Kirk, to go upon the premises and drill. Kirk cannot be charged with being a trespasser for doing that which the lease required of the lessee. Plaintiff's real complaint against Kirk was that Kirk claimed to be the sole owner. The simple question was one of ownership, of a part interest in the lease as between plaintiff and Kirk. After plaintiff's ownership of an interest in the lease was established, the question then was, what sum should plaintiff recover for his share of the product of the well.

Plaintiff contends the court should have found the market price of the gas at the well to be sixteen cents per thousand cubic feet

instead of fifteen cents. There is evidence that defendant paid the royalty owner on the basis of sixteen cents. Of course, what is paid for a thing does not necessarily establish its market value, though in a situation such as this it has a strong tendency to do so. There was other evidence pertaining to the market value, some of which tended to show there was no market for the gas from this well unless it was taken by defendant, and other evidence that by the expenditure of $10,000 to $12,000 a part of it might have been marketed through the pipe line of another company. Taking the situation as a whole, we cannot say the court erred in fixing the market value at fifteen cents.

Plaintiff objects to the amount found by the court for the cost of drilling the well, for the reason that it includes the cost of one string of casing which was pulled. The difficulty in dealing with that question is that the itemized cost of drilling the well was not before the court. All the evidence showed was the gross cost. Since defendant owned a share of this lease it would seem that the cost of this well should have been borne in proportion to the interest of the parties in the lease. But that question was not raised in the court below nor argued here, and would make but little difference in the total judgment.

Plaintiff contends that the court should have allowed interest upon the amount of gas taken each month up to the time of judgment. In this case the question whether defendants were liable for any sum, the question of the amount taken from the well, and the question of its market value, were all controverted questions. The uncertainties in these matters made the claim of plaintiff against defendants an unliquidated demand, as that term is defined and illustrated in 33 C. J. 210-212. (See, also, *Trust Co. v. Robinson,* 89 Kan. 842, 132 Pac. 979; *Lower v. Shorthill,* 103 Kan. 904, 176 Pac. 647.)

Plaintiff contends he should have had judgment against the City of Iola and the Lehigh Portland Cement Company. They purchased gas from the J. B. Kirk Gas and Smelting Company, and paid for it at a time when none of them were parties to the action. These consumers had no actual notice of plaintiff's claim until they were made parties to the action. Prior to that time they had no contract or dealings with any party to the action. Plaintiff's contract under which he claimed was not of record. The J. B. Kirk Gas and Smelting Company delivered and sold gas from many wells.

There was no error in the court refusing plaintiff judgment against these defendants. The ordinary consumer of gas, buying it from a distributing and selling company, who has no actual or constructive knowledge of a controversy over the gas from a specific well, is not liable for conversion to a successful claimant of an interest in the gas from such well.

Plaintiff contends he should have been allowed for gas taken from the well by the by-pass, but the court found no appreciable amount of gas was taken through the by-pass, and there is evidence which sustains this finding.

Defendants contend that the court should have made an allowance to them for the cost of marketing the gas, building their pipe line to Iola and operating it, and there is much evidence in the record concerning that expense. But this pipe line had been constructed to the Colony field and was in operation prior to the drilling of this well, hence the cost of constructing the line could not be charged to this well. Had there been a claim for the expense of connecting this well with the pipe line at Colony, that should have been taken into account and plaintiff charged with his portion thereof, according to his interest in the lease; but no such claim was made.

Defendants contend that much of the gas which flowed from the well did not come from under the lot covered by the lease. That is argued in this way: The lot was 25x140 feet, the gas sand 100 feet thick, and computing the pressure of the gas, they contend that only 27,000,000 cubic feet was under this lot, that the remaining gas taken from this well really came from other property in which the plaintiff had no interest. There is no merit in this argument for the reason: (1) That it was not raised by the pleading, but on the other hand, defendants set out in their answer that "the gas well had a capacity, was capable of producing, and did produce gas as follows . . . total 399,003,994 cubic feet." (2) It was only speculative as to how much gas was actually under this lot when the well was first drilled; and (3) The rule seems to be that when one drills a gas or oil well on his premises he becomes the owner of all the oil and gas produced therefrom. (See *Zinc Co. v. Freeman,* 68 Kan. 691, 696, 75 Pac. 995; 18 R. C. L. 1205, 1208; 1 Thornton on Oil and Gas, 4th ed., p. 315.)

Finding no substantial error in the case, the judgment is affirmed.