## No. 27,218.

### E. L. BLACK, *Appellee,* v. W. G. BLACK, *Appellant.*

#### SYLLABUS BY THE COURT.

VENDOR AND PURCHASER—*Oral Contract to Convey—Evidence—Findings.* In an action by a son against his father to have land occupied by the son decreed to be his property and to enjoin the father from mortgaging, or alienating it, title to which is in the father but which is claimed by the son under an oral contract between the father and the son by which the father agreed to give the land to the son upon performance of certain specified services, judgment should be rendered in favor of the father, where findings of fact are made which show an intention on the part of the father to give the land to the son as a gift and do not show that there had been any enforceable contract made between them concerning the conveyance of the land.

Appeal from Sedgwick district court, division No. 3; GROVER PIERPONT, judge. Opinion filed June 11, 1927. Reversed.

*C. L. Foster,* of Sedgwick, *Charles B. Hudson* and *Clyde M. Hudson,* both of Wichita, for the appellant.

*William Keith,* of Wichita, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff sued to have himself declared the owner of certain real property and asked that the defendant, pending the litigation, be enjoined from conveying, mortgaging, encumbering, bequeathing or alienating any of the property or disturbing the plaintiff in his possession thereof. Judgment was rendered enjoining the defendant from conveying, mortgaging, alienating, or encumbering the property and from disturbing the plaintiff in the possession thereof "so long as said plaintiff shall make returns therefrom to the defendant in accordance with the terms of the agreement made between the parties as found by the court." The defendant appeals.

Appeal and Error, 4 C. J. p. 775 n. 26.  Gifts, 28 C. J. p. 680 n. 70; 12 R. C. L. 940.

The trial was by the court, and on request findings of fact and conclusions of law were made as follows:

"1. Plaintiff in this action is a son of the defendant, who is a man 87 years of age. During the years from 1910 to 1913 he was engaged in the automobile business in Wichita, Kan., which business was not profitable to the plaintiff. During the year 1913 plaintiff and defendant had a conversation with reference to a farm belonging to the defendant, located in section 3, township 25 south, range 1 west of the sixth principal meridian, Sedgwick county, Kansas, less the right of way of the Santa Fe and Interurban railways, the land consisting in all of about 240 acres. This land was not after 1917 the homestead of the defendant, the latter in that year moving to and residing in the city of Sedgwick.

"2. In this conversation or conversations taking place at about the same time, it was agreed between the plaintiff and defendant that the plaintiff should move upon the land in question, should furnish his own equipment, machinery, implements and stock for the purpose of farming the same; that each party should pay one-half of the threshing bill and furnish one-half of the seed; that the defendant should pay all taxes coming due on the property; and that the defendant should have one-half of all the crops raised upon said farm. This was in excess of the regular and reasonable rental charge for land in that locality. During these conversations the defendant, the father, told the plaintiff, the son, that at some time he was to have one-half of the farm, or 120 acres.

"3. Pursuant to these conversations plaintiff moved upon the farm. There were two sets of improvements on the farm, one on the north half and one on the south half. Plaintiff at that time moved into the improvements on the south half of the farm. He lived therein until May, 1917, when the improvements on the south half were destroyed by cyclone and those on the north half damaged to some extent. Plaintiff then moved upon the north half of the farm, continuing to reside there, the arrangement with reference to expenses and division of crops being carried out until the summer or early fall of 1923.

"4. At about that time plaintiff and defendant had a conversation in which the defendant informed plaintiff that he had decided to have his other son, John, move upon the south half of the farm and that the plaintiff could fix up the north half to suit himself, and in the course of the conversation stated that he intended to divide the farm between his two sons, giving plaintiff herein the north half. Plaintiff then made repairs upon the improvements on the north half, building a porch, doing some plastering and painting work and built some wire fence. The other son, John, built a new and valuable home upon the south half and moved thereon and from that time each son farmed the respective half of the land upon which he was living. Plaintiff made returns to the defendant for crops as before. There was some discussion about a line fence between the two portions of the farm and the fence was not built upon the exact center, but somewhat to the south of the center. The father made the remark to his banker that his papers would show where the line should be; that he had divided the farm. During the years 1914 and 1915 the defendant had conversations with two persons in which he said that he

was going to divide his farm between his two boys. The son, John, also stated his father had divided the farm and that he, John, was to get the south half and for that reason he was building a house.

"5. From the years 1896 to 1914 the plaintiff advanced money to his father, also received certain money from his father, the defendant herein. From the evidence the court is unable to determine the exact standing of the account between the two parties hereto.

"6. In April, 1925, the father expressed dissatisfaction to the plaintiff herein as to the way in which the land was being farmed and told him that he was going to serve notice on him to get off the land. Subsequently, on the fourth day of August, 1925, the defendant served notice upon the plaintiff to vacate the north half of the farm and this action followed. There is no showing that the land was not being properly farmed.

"7. Plaintiff cannot be fully and adequately compensated in money; has performed the conditions of the oral agreement on his part and has only to make return on one-half of the crop raised on said farm during the life of the defendant.

"CONCLUSIONS OF LAW.

"1. Plaintiff is entitled to a perpetual injunction as to the land in question, to wit:

"The south half (S½) of the northwest quarter (NW¼) and the north half (N½) of the north half (N½) of the southwest quarter (SW¼) of section 3, township 25 south, range one west of the sixth P. M., in Sedgwick county, Kansas, less the right of way of the Santa Fe and the interurban railways, enjoining the defendant and all persons claiming or to claim by, through or under said defendant from setting up or claiming any right, title or interest in or to said property or any part thereof, and enjoining said defendant from conveying, devising, mortgaging, alienating or encumbering said land or any part thereof or in any manner selling, assigning or conveying the same to any person whomsoever other than the plaintiff herein, and enjoining the defendant from disturbing the plaintiff in the possession of said land or any part thereof so long as he shall make returns therefrom to the defendant in accordance with the terms of the agreement between the parties."

The argument of the defendant may be summarized into three contentions—one is that the petition did not state facts sufficient to constitute a cause of action, another is that the findings of fact were not supported by evidence, and the last is that the judgment of the court is not supported by the findings of fact. Only the last of these propositions needs to be discussed. If the findings of fact did not sustain the judgment, it must be reversed.

In *Snodgrass v. Carlson*, 117 Kan. 353, 232 Pac. 241, this court declared that—

"We regard it as well established that when a court sits as a trier of facts and is asked to make findings of fact and does so, in accordance with R. S. 60-2921, he is presumed to make findings of fact upon all questions necessary to sustain the judgment rendered. In such a case the facts found will be pre-

sumed by this court to embrace all the facts of the controversy established by proof."

This rule is supported by *Shuler v. Lashhorn,* 67 Kan. 694, 701, 74 Pac. 264; *Allen v. Allen,* 101 Kan. 622, 624, 168 Pac. 675; *Lasley v. Pendleton,* 109 Kan. 466, 472, 200 Pac. 274; *Graham v. Elevator Co.,* 115 Kan. 143, 146, 222 Pac. 89; *State, ex rel., v. Riverside Drainage District,* 123 Kan. 46, 254 Pac. 366.

Attention is directed to the last sentence in the second finding, which is as follows:

"During these conversations the defendant, the father, told the plaintiff, the son, that at some time he was to have óne-half of the farm, or 120 acres."

Attention is also directed to parts of the fourth finding as follows:

"At about that time plaintiff and defendant had a conversation in which the defendant informed plaintiff that he had decided to have his other son, John, move upon the south half of the farm and that the plaintiff could fix up the north half to suit himself, and in the course of the conversation stated that he intended to divide the farm between his two sons, giving plaintiff herein the north half.

"During the years 1914 and 1915 the defendant had conversations with two persons in which he said that he was going to divide his farm between his two boys. The son, John, also stated his father had divided the farm and that he, John, was to get the south half and for that reason he was building a house."

These quotations from the findings of fact are all that attempt to show a contract between the plaintiff and defendant by which the latter agreed to convey the land to the former.

Attention is also directed to that part of the judgment enjoining the defendant from conveying, mortgaging, alienating, or encumbering the property "so long as said plaintiff shall make returns therefrom to the· defendant in accordance with the terms of the agreement made between the parties as found by the court."

A careful examination of the findings does not disclose a present intention to convey the property to the plaintiff, but discloses an intention on the part of the defendant to give the property to the plaintiff at some time in the future. The findings disclose an intention to give as a gift, but· do not show a contract to convey in consideration of services performed. In this action, it should be noted that the plaintiff paid rent for the use of the land and that he received a share of the crop for his labor.

The court did not find an enforceable contract, and one was not proved.

The judgment is reversed, and the trial court is directed to render judgment for the defendant.