PAULY JAIL BLDG. & MANUF'G CO. v. HEMPHILL COUNTY.

(Circuit Court of Appeals, Fifth Circuit. May 15, 1893.)

No. 135.

1. APPEAL—MATTERS BROUGHT UP FOR REVIEW—EXCEPTIONS BY DEFENDANT IN ERROR.

On a writ of error sued out by plaintiff to review a judgment on a verdict for defendant, exceptions taken by defendant to rulings sustaining objections to certain of his pleas cannot be considered.

2. CONTRACTS—PERFORMANCE—CONCLUSIVENESS OF DECISION OF INSPECTOR.

A contract with a county by plaintiff, a nonresident corporation, to build a jail, provided that the county should appoint a commissioner qualified to judge of the work, whose duty it should be to inspect and report upon the work, and to notify plaintiff of any work or materials not in accordance with plans and specifications; his allowing the work to be completed without notice to be considered as an acceptance of it by the county. *Held,* that it was no defense to an action for the contract price that the commissioner appointed was not qualified for the duty, and that nothing but positive proof of mala fides on plaintiff's part could overcome the finality of the commissioner's action.

3. SAME.

The jury in such action were instructed to find for defendant if they should find that the material and work did not substantially comply with the requirements of the contract and specifications. *Held,* that this did not give sufficient weight to the provision for inspection.

## In Error to the Circuit Court of the United States for the Northern District of Texas.

This was an action brought by the Pauly Jail Building & Manufacturing Company, of St. Louis, Mo., against the county of Hemphill, state of Texas, upon a contract entered into June 22, 1888, whereby the plaintiff contracted to build for defendant county, at the county seat, the town of Canadian, a jail and cells, according to certain specifications agreed upon, and the defendant county agreed, upon the completion of said jail building, to pay to the plaintiff $13,000 in 6 per cent. coupon bonds, to be issued by the defendant county. The plaintiff's petition alleged and set up the contract and specifications at length, and, that it had completed said jail building in accordance therewith,' but that defendant refused to pay plaintiff anything for the jail, or make or deliver its bonds, as it had contracted to do, to plaintiff's damage, as is alleged, of $15,000. One of the provisions of the contract, as set out in plaintiff's petition, is: "Said party of the second part further agrees to appoint a commissioner, whose duty it shall be to inspect and report upon the work during its construction, said commissioner to be a man qualified to judge of the work; and should any work be done, or should any material be furnished, which, in his opinion, is not in accordance with plans and specifications, it shall be his duty to notify the party of the first part thereof, by letter mailed to its address at its principal office, in St. Louis, Mo., unless said commissioner and the agent or subcontractor of said party of the first part can agree upon the subject in controversy. Should said commissioner allow, said work to be completed without notice, it shall be considered the same as an acceptance of the work by the party of the second part. When notice of the time fixed for the completion thereof is given by the said party of the first part, the said commissioners' court shall convene in special session at a time to be fixed by the said party of the first part, examine the said work, and receive the report of said commissioner, and, if completed according to contract, shall accept the same, and make payment therefor as hereinbefore agreed."

The defendant, in answer to plaintiff's petition, among other defenses, charged that "plaintiff and its agents, having full authority in the premises, entered into a combination and conspiracy with one Polly, the county judge for said Hemphill county, and at least two of the commissioners for said county, for the purpose of defrauding said county by building a jail, and palming the same off upon said county at at least three times its cost and value, the profits and gains thereon to be divided between the plaintiff and said county judge and said commissioners;" that "Hemphill county, through her county judge and commissioners, and before the plaintiff had expended anything upon the faith of said pretended contract, protested against said contract, and repudiated the same, and that, if the plaintiff ever built a jail pursuant to or under said contract, the same was built by the plaintiff, at his own risk, over the protest and in defiance of the wishes of the defendant, the plaintiff relying solely upon a void contract, obtained by debauching and corrupting the commissioners' court for said county, to burden the defendant with an illegal debt;" that "the clause in said contract providing that a commissioner

should be appointed by the defendant to represent it in the construction of such jail was fraudulently inserted by the plaintiff, in order to overreach the defendant, and to, estop it from complaining of worthless work and material, and not from any honest and legitimate purpose, and to enable the plaintiff to take advantage of its own fraud and wrong, and is against public policy and void." It charged also that, knowing that the plaintiff was proceeding forcibly to build the jail, and that it would rely upon the clause providing for the appointment of a commissioner, the commissioners of defendant county appointed one Robert Moody to act as such commissioner. as was provided by the contract, with the express agreement with the plaintiff that such appointment should not be held as a recognition of the contract. The defendant also charged that the plaintiff did not use bricks of the kind required by the specifications, but soft and worthless ones; that it used a class of stone apparently sound and durable. but which was known by plaintiff and its agents to be unsound, and wholly unfit for the work; and that it did falsely and fraudulently represent to said Moody that said stone was sound and durable. It also claimed that Moody was not an expert in judging of the quality or grade of cement or paint or tin to be used, and in each of these respects the plaintiff, to keep him from objecting to the quality used, did falsely and fraudulently represent to the defendant and to Moody that the quality and grade of each of these articles were the best grade and quality; and that he (said Moody) was so induced not to object to the use of the same, but that the quality and grade of such were worthless, cheap, and inferior to what had been specified in the contract. It is alleged that plaintiff and its agents did fraudulently and secretly use, in the cement work of the floor, grass, weeds and other perishable material, instead of broken stone or brick, as required in the specifications; that plaintiff failed and refused to place galvanized iron window and door caps on the windows and doors. and elbows on the down spouts sufficient to conduct the water away from the building, and willfully, intentionally, and fraudulently failed to comply with the contract in almost every particular.

The plaintiff then filed a supplemental petition, and demurred to the plea of defendant which set up the matters of bribery and interest of its commissioners in the contract, because the same were no defense to plaintiff's said action, and to the plea of revocation of contract, because it was not alleged that the same was done with plaintiff's consent. The plaintiff further excepted to that part of defendant's answer wherein the ignorance, incompetency, and unfitness of the commissioner or supervisor appointed by the defendant was set up, as it did not allege or contend that the said commissioner acted fraudulently or corruptly. The plaintiff further excepted to so much of the first amended original answer as pleaded that the provision of the contract for the appointment of a commissioner or supervisor was inserted in defendant's contract with fraudulent intent for the purpose of deceiving and overreaching the defendant, because that allegation constituted no defense to plaintiff's cause of action, and that the defendant is estopped from pleading its ignorance of said contract. The plaintiff further excepted to all of the said original answer which sought to set up, by way of defense, the failure to perform the work according to the contract, because said amended answer nowhere alleged that due notice of such defects, if any, at the time of their occurrence, was mailed to plaintiff at St. Louis, in accordance with the terms of said contract; and that this defect is not cured or obviated by any allegation as to the ignorance or unskillfulness of said commissioner.

The case coming on to be heard, the court sustained the plaintiff's first and second exceptions, which were to so much of said answer as set up bribery of the commissioners and the revocation of the contract, and that the paragraph of the contract which provided for the appointment of a commissioner was fraudulently inserted, and that alleged the walls to be out of plumb, and that plaintiff and its agents wholly failed and refused to place galvanized iron window and door caps upon the building, to which ruling the defendant excepted; whereupon, the trial being had before a jury, plaintiff introduced in evidence certified copies of the records of the county court of Hemphill county for 22d of June, 1888, authorizing the county judge to sign the contract for building the jail building, and the original contract and specifications; also, the order of the county court appointing Robert Moody as com-

missioner on the part of the county, as provided for by the contract, and the testimony of John Rausch, the superintendent of the plaintiff company engaged in the construction and erection of this jail building, who testified generally as to the building, saying that it was constructed according to the plans and specifications, and in most particulars it was better, showing the particulars wherein the building differed, if any, from the specifications in the contract, and claimed in several respects that the work done and quality of material used was better than called for. Here the plaintiff rested its case. The defendant then read letters showing that Moody, the commissioner or supervisor, appointed by the commissioners' court for said county, had complained to the plaintiff, at its home office at St. Louis, and also to the superintendent in charge, of bricks which were being used at the time, and protesting against their use. The testimony of said Moody was that such protest was regarded once or twice, but some of the brick were put into the building; that part of the outside walls were built of brick that he objected to; that they were of different colors, and soft; that they were put in the walls, but it was represented to him that they were taken out; and that he saw some of them taken out, but he did not see all of them taken out; and that the plaintiff's agents used a lot of poor brick, notwithstanding his protest. Moody also testified that he was no judge of the quality of cement; that he had to depend upon the label on the outside of the barrel and what others told him about it; that the stone that was used looked all right and solid to him; that he knew that it came from a condemned building, but that he supposed the building had been condemned on account of the poor workmanship in it; that Watson, who was doing the work (plaintiff's agent), said they were good rock; that he looked at them, and they looked very good; that, in mixing concrete, it would get out among the weeds, and the man would rake in the grass and weeds with the concrete, and get it mixed up; that he objected, and the man started to rake it out, and Watson said: "Don't rake it out; it is just as good as hair or anything." Part of the grass and weeds was taken out, but he had reason to believe it was not all taken out. He further testified that, at the time the cement was used, he had no reason to believe that it was inferior and not good; that Mr. Rausch claimed that it was good or better than the contract called for, but that Louisville cement was used, instead of Rosedale; that Mr. Rausch said it was the same grade of tin that was used that the contract called for, except that it was a little better and one grade heavier. The defendant also introduced testimony tending to prove that the county never accepted the jail; that it was never used but once, and that was with the subcontractor's consent, and upon the provision and understanding that such use of it should in no way be construed into an acceptance of it by the county. It was also shown in evidence that the authorized agent of the Pauly Jail Building & Manufacturing Company, after the completion of the building, made a tender of the keys to defendant's agents, and requested a full investigation of every phase of the jail contract and the work of construction. The defendant also introduced testimony to show that the floors of the building were imperfect; that the roof leaked in several places; and that the walls were not plumb; that some of the stones of the foundation were soft, and cleaved off in places.

During the trial, the plaintiff announced to the court that it abandoned its claim on a quantum meruit, and stood on the contract alone. After the introduction of much testimony regarding the quality of the material furnished and the character of the work performed, which we do not deem it necessary to review for the purpose of this case, the trial judge charged the jury:

"(3) A substantial compliance by plaintiff with its contract, according to the terms of said contract and the specifications attached thereto, is all that was required of plaintiff in erecting said jail house; and if you find, from the evidence, that the character of the material used in erecting said jail and the work in constructing said jail both came up substantially to the requirements of the contract sued on, and that said jail, when finished, was a substantial compliance with said contract and specifications attached thereto, then you will find for plaintiff the contract price of said jail, to wit, $13,000, with interest thereon at 6 per cent. from February 9, 1891.

"(4) The converse of the above proposition is true. If you find, under the

evidence, that the material used in constructing said jail and the work done in erecting same did not substantially comply with the requirements of said contract and specifications, then you will find a verdict for the defendant.

"(5) Defendant has alleged that said jail was constructed with soft, inferior brick, unsuited for the construction of said jail house; also, that plaintiff used a class of stone that was unsound and perishable for the foundation walls of said jail; also, that plaintiff used a grade of cement inferior to pure English cement, and unsuited to the work to be done on said jail; also, that plaintiff used, in roofing said jail, a grade of tin inferior to that called for in the contract. If the testimony convinces you that the matter of brick, above referred to in this paragraph, plaintiff fell below the contract in the character of the material used, and that such departure (taking the jail as a whole, and considering the purposes for which it was to be used) made the jail, when completed, not a substantial compliance with the contract, then you will find for defendant. On the other hand, if such departure from the contract, if found from the evidence to have occurred, was not material and substantial, and the jail, notwithstanding such departure, was still a substantial compliance with the contract, then you will find for the plaintiff, as instructed in paragraph No. 3, above, unless, under instructions No. 6 of this charge, you find for defendant.

"(6) If you are satisfied from the testimony that plaintiff used a stone for the foundation walls of said jail that was unsound and unfit for that purpose, or used a quality of cement in constructing said jail that was cheap and inferior to that called for in the contract, or used a grade of tin inferior and different to that called for in said contract, and that Robert Moody, commissioner, suffered said material to be used in constructing said jail under the mistaken belief that it was a good quality, and complied with the contract, and that such belief on the part of Moody was induced by the fraudulent and false representations of plaintiff's agents, who were constructing said jail, to the effect that said material was good and complied with the contract, then, if the testimony further convinces you that, in one or more of the three cases referred to in this paragraph, plaintiff fell below the contract in the character of the material used, and that such departure (taking the jail as a whole, and considering the purposes for which it was to be used) made the jail, when completed, not a substantial compliance with the contract, then you will find for defendant. On the other hand, if such departure from the contract (if found from the evidence to have occurred) was not material and substantial, and the jail, notwithstanding such departure, was still a substantial compliance with the contract, then you will find for the plaintiff, as instructed in paragraph No. 3. above, unless, under instruction (5) five of this charge, you find for defendant.

"(7) If you find from the testimony that the commissioner Robert Moody allowed said work of laying the foundation with the stone with which it was laid to be completed, and the roofing of the jail with the tin that covered it to be done, and the cement floors to be laid without objection on his part, and that such action on his part was not induced by fraud or fraudulent representations of the plaintiff or its agents, but grew out of carelessness, ignorance, or inattention of said Moody, then the defendant cannot now complain of the use of said material, unless there was a gross departure from the contract in the use thereof, such as rendered the building substantially unfit for the uses for which it was intended; but if said brick or stone or tin or cement, or the work thereon, when put into said jail, were inferior to that called for by the contract, but not to an extent that prevented said jail from substantially complying with the contract sued on, then you will find for plaintiff the contract price of said jail, to wit, $15,000, less the value thereof by reason of such defective work or material.

"(8) If there was no willful departure by plaintiff from the terms of the contract, or omission in essential points, but, if he performed the contract in all its essential and material particulars, he will not be held to have forfeited his right to pay by reason of unimportant or technical omissions or defects.

"(9) The charge that the county judge and two of the commissioners were interested in the contract is not before the jury; neither is the charge that they were bribed."

Whereupon the plaintiff moved the court to instruct the jury to disregard all evidence touching the defective material or defective construction, except such defects as the evidence shows may have been communicated to plaintiff at its principal office in St. Louis, Mo., by the commissioner of the defendant, which the court refused to do, and plaintiff excepted to such refusal, and also to the fourth, fifth, sixth, and seventh paragraphs of the court's charge to the jury. The jury returned a verdict for the defendant, and plaintiff filed a bill of exceptions, with seven assignments of error.

George Clarke and D. C. Bolinger, for plaintiff in error.
W. O. Davis and J. L. Harris, for defendant in error.

Before McCORMICK, Circuit Judge, and LOCKE and TOULMIN, District Judges.

LOCKE, District Judge (after stating the facts). The history of this case, as shown by the record, is that one board of county officers, county judge, and commissioners of the defendant, while in office, entered into a contract with the plaintiff for the building of a county jail, for which the county was to issue and deliver to it $13,000, in coupon county bonds. Subsequently, and before the jail was built, a new board of county officers, being elected, considering, apparently, that the county did not need a jail, endeavored, if possible, to defeat the contract, but the record fails to show what action they took, if any, to rescind it, or to notify the plaintiff of their rescission of it, if any was made.

The first contention of defendant county, and which has been ably urged, is that the plaintiff had no right in law or justice to insist upon building the jail, and thus increase any expense or damage that might be suffered by the county. While such contention would appear to be entitled to consideration, the record of the case is such that it is impossible to determine the facts connected with the rescinding of the contract. Such abrogation was pleaded and excepted to, and the exception sustained; and, although the ruling appears to have been excepted to, yet, the exception being taken by the defendant, in whose favor judgment was given, we have before us no bill of exceptions or assignment of errors in that behalf. Admitting that the position of defendant in that particular point is correct, and that notice of the rescission of the contract was duly given, and plaintiff had its remedy in an action for damages for a breach of the contract, such plea could not fully defeat the plaintiff's action, but might limit the damages. Tufts v. Lawrence, 77 Tex. 526, 14 S. W. 165. The same may be said in regard to the ruling of the trial court upon the plea of defendant found in the fourth paragraph of its answer, wherein bribery and a corrupt and illegal conspiracy between the officers of said county and agents of the plaintiff company are alleged. The judgment being in favor of defendant, by whom such exceptions were taken, we do not consider that those questions are so before us that we are permitted to pass upon them.

In the case as presented for our judgment, the plaintiff was a nonresident corporation, acting entirely through its agents and subcontractors, and the provision in the contract which placed it within the power of the defendant county to select its own commis-

sioner to act as inspector during the building, if honestly carried out in accordance with its terms, would necessarily have been of the greatest assistance and protection to both of the contracting parties, and would appear to be a wise and prudent precaution in the completion of such a work, the actual supervision of which must necessarily be delegated to the representatives of each party, and could not be scrutinized by the principals of either. By it every opportunity in reason was given for the defendant to secure good materials and work, and the plaintiff would at the same time be protected from the faults and negligence of its own servants, by being immediately informed of, and enabled to correct them, and also from any complaints that might be subsequently made, too late to determine their truth or falsity. The action of such an arbiter or supervisor, in the absence of any complaint made at the time and in the manner provided by the contract, is prima facie evidence of compliance with the contract, and should be conclusive, except upon clear and distinct proof of fraud. Railroad Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035; Kihlberg v. U. S., 97 U. S. 398; Sweeney v. U. S., 109 U. S. 618, 3 Sup. Ct. 344; Railroad Co. v. Price, 138 U. S. 185, 11 Sup. Ct. 290; Ogden v. U. S., 60 Fed. 725;[1] Railway Co. v. Gordon, 151 U. S. 285, 14 Sup. Ct. 343. In determining such question of fraud, the burden of proof is upon him alleging it. Was such evidence of fraud given in this case as would justify the submission of that question to the jury, or was it sufficient to justify the jury in finding fraud? Fraud is something more than the expression of an opinion which may prove not to be true, with no intent or desire to wrong or mislead. Nothing but an actual intention to deceive—nothing but an actual fraud—would justify a finding impeaching the plaintiff's compliance with the terms of the contract. An intentional perversion of the truth, for the purpose of obtaining some advantage of another, would, we consider, be necessary to remove the presumption of the fairness of action in such a case as this. The contract provided that the commissioner should be a man qualified to judge of the work, and was to be selected by the defendant; and alleging in the answer that no such man was selected, but one not qualified for the duty devolving upon him, should have no weight as a matter of defense, and nothing but positive proof of mala fides on the part of the plaintiff or its representatives should be permitted to overcome the finality of the commissioner's action. Unquestionably, in the making of the contract, it was the intention of both the contracting parties that his action should, in the absence of fraud, be final.

With this view of the case, all questions regarding the character and nature of the work, except the brick complained of by him and the fraud of the plaintiff, are eliminated from the case. But these should be carefully considered at each step of the proceedings. In the fourth paragraph of the learned judge's charge, we find the instruction to the jury that, if they found the material and work did not substantially comply with the requirements of the contract and

[1] 9 C. C. A. 251.

specifications, they should find for the defendant. In this, with no language of reference to or connection with any other portions of the charge, we do not consider that sufficient weight was given to that important provision of the contract providing for an inspection, but that the beneficial effects of all such supervision were eliminated from the case. In this we consider an error was committed, to the injury of the plaintiff. Nor do we consider the testimony would have justified the jury in finding such evidence of mala fides of the plaintiff in the representations regarding the brick, stone, cement, and tin as would have entirely defeated its claim, under the sixth article of the charge, which was excepted to.

The judgment of the court below is reversed, and the cause remanded, with instructions to grant a new trial; and it is so ordered.