## UNITED STATES v. TEN CASES, MORE OR LESS, BRED SPRED, Etc., et al.

No. 8934.

*Circuit Court of Appeals, Eighth Circuit.*
March 25, 1931.

Rehearing Denied May 4, 1931.

ser, Crandell Company, intervener, in a libel by the United States against ten cases, more or less, of Bred Spred, strawberry flavor, and other articles of food of similar character.

The libel proceedings were brought by virtue of the Food and Drugs Act, 21 USCA § 1 et seq. (34 Stat. 768). The libel contained three charges of adulteration and five charges of misbranding. The product involved was a food product, its use being indicated by its name.

The libel alleged a shipment in interstate commerce of the Bred Spred by the Glaser, Crandell Company; and prayed for a seizure of the product for condemnation and confiscation.

The provisions of the statute here deemed material are set out in the margin.[1]

---

[1] "§ 8. Adulterated articles. For the purposes of sections 1 to 15, inclusive, of this title, an article shall be deemed to be adulterated. * * *
"Food. In the case of food:
"*Injurious mixtures.*—First. If any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength. * * *
"*Damage or inferiority concealed.*—Fourth. If it be mixed, colored, powdered, coated, or stained in a manner whereby damage or inferiority is concealed. * * *
"§ 9. Misbranded; meaning and application. The term 'misbranded,' as used in sections 1 to 15 inclusive, of this title, shall apply to all drugs, or articles of food, or articles which enter into the composition of food, the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular, and to any food or drug product which is falsely branded as to the State, Territory, or country in which it is manufactured or produced.
"§ 10. Misbranded articles. For the purposes of sections 1 to 15, inclusive, of this title, an article shall be deemed to be misbranded; * * *
"Foods. In the case of food:
"*Imitation or use of name of other article.*—First. If it be an imitation of or offered for sale under the distinctive name of another article. * * *
"*False or misleading statements on package or label as to ingredients or substances.*—Fourth. If the package containing it or its label shall bear any statement, design, or device regarding the ingredients or the substances contained therein, which statement, design, or device shall be false or misleading in any particular. An article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases:
"*Mixtures or compounds under distinctive names.*—First. In the case of mixtures or compounds which may be now or from time to time hereafter known as articles of food, under their own distinctive names, and not an imitation of or offered for sale under the distinctive name of another article, if the name be accompanied on the same label or brand with a statement of the place where said article has been manufactured or produced.
"*Articles labeled, branded as compounds, imitations, or blends; construction of term 'blend'; disclosure of trade formulas of proprietary foods.*—Second. In the case of articles labeled, branded, or tagged so as to plainly indicate that they are compounds, imitations, or blends, and the word 'com-

John B. O'Donnell, Asst. to Sol., U. S. Department of Agriculture, of Washington, D. C. (Ross R. Mowry, U. S. Atty., of Newton, Iowa, and W. Clifton Stone, Atty., Department of Justice, and Elton L. Marshall, Sol. U. S. Department of Agriculture, both of Washington, D. C., on the brief), for the United States.

George W. Lennon, of Chicago, Ill. (Daniel J. Schuyler, Charles Weinfeld, and William C. Graves, all of Chicago, Ill., on the brief), for appellees.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

## BOOTH, Circuit Judge.

This is an appeal from a judgment after a directed verdict in favor of claimant, Gla-

The answer set up an estoppel by reason of the record of a similar suit in the United States District Court for the Eastern District of Michigan, including a judgment of dismissal on the merits and a dismissal of an appeal by the United States, said record being set out at length in the answer. Denials of the charges of adulteration and misbranding were also set up in the answer.

On motion of the United States, the trial court, in the case at bar, struck out all that part of the answer relating to the alleged estoppel based on the record of the Michigan case.

A trial was had on the merits and at the close of the evidence introduced by the United States, on motion of the claimant, Glaser, Crandell Company, a verdict was directed in its favor and judgment entered dismissing the libel for want of proof of adulteration or misbranding.

The present appeal followed.

The facts, either admitted or shown by the testimony, are, as appears from the record, substantially as follows: Bred Spred, strawberry flavor, contains 17 parts of strawberries, 55 parts of sugar, 11½ parts of water, ¼ part of pectin, and .04 of a part of tartaric acid. Pectin is a fruit product found in considerable quantities in apples, and in different amounts in different fruits. It has the effect, if there are proper amounts of water, sugar, and acid present, to form a jelly. In a product such as Bred Spred, it forms a jelly with the water, sugar, and acid present, and keeps the fruit distributed—keeps it from floating to the top. Tartaric acid is a natural fruit acid and has nothing harmful in it. There is nothing harmful or deleterious in the product Bred Spred. It has some food value and some nutritive value. The label on the jars containing Bred Spred was in part as follows: "Bred Spred (pictorial design of fruit) Strawberry * * * Flavor, Glaser, Crandell Co., Chicago, Net Weight 4 pounds." There were other flavors such as peach, pineapple, blackberry, etc.

pound,' 'imitation,' or 'blend,' as the case may be, is plainly stated on the package in which it is offered for sale. The term blend as used herein shall be construed to mean a mixture of like substances, not excluding harmless coloring or flavoring ingredients used for the purpose of coloring and flavoring only. Nothing in sections 1 to 15, inclusive, of this title shall be construed as requiring or compelling proprietors or manufacturers of proprietary foods which contain no unwholesome added ingredient to disclose their trade formulas, except in so far as the provisions of such sections may require to secure freedom from adulteration or misbranding."

The jars of Bred Spred here in controversy had been shipped in interstate commerce.

Jam is considered by manufacturers as not less than 45 parts of fruit to 55 parts of sugar. Housekeepers usually make jam of 50 per cent. fruit and 50 per cent. sugar.

In addition to the foregoing facts, appearing in the record, there were introduced exhibits, about eight in number, consisting of jars of jam and jars of Bred Spred, the latter being part of those seized and sought to be condemned and confiscated. None of these exhibits have been brought before this court.

The main contentions of appellant in this court are that the trial court erred in not submitting the questions of adulteration and misbranding to the jury.

The claimant not only opposes these contentions, but urges affirmatively that both questions were res adjudicata by reason of the Michigan judgment, and asks that this court so hold.

We take up first this request of the claimant.

It is to be noted that the claimant made no cross-assignments of error, and took no cross-appeal. Perhaps this was not feasible, inasmuch as the judgment was in claimant's favor and was not divisible into parts. Zoline's Fed. App. Juris. & Proc. (3d Ed.) § 138. However, claimant contends that, inasmuch as the record of the Michigan case is in the record of the present case, this court should examine the same and pass upon the question of res adjudicata.

That the Supreme Court of the United States would have power so to do, if the appeal were pending before it, appears to be settled. Langnes v. Green, 282 U. S. 531, 51 S. Ct. 243, 75 L. Ed. ——; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U. S. 555, 51 S. Ct. 248, 75 L. Ed. ——.

Whether this court has such power we need not decide. Even conceding the existence of the power, we think it should not be exercised in the instant case.

It has long been the general rule of practice in law cases in the federal courts that questions decided adversely to the defendant in error (now the appellee), in the course of the trial in the lower court, will not be considered in the appellate court, in the absence of a cross-appeal. Cleary v. Ellis Foundry Co., 132 U. S. 612, 10 S. Ct. 223, 33 L. Ed. 473; Bolles v. Outing Co., 175 U. S. 262, 268, 20 S. Ct. 94, 44 L. Ed. 156;

Pauly, etc., Co. v. Hemphill County (C. C. A.) 62 F. 698, 703; Guarantee Co. of N. A. v. Phenix Ins. Co., 124 F. 170 (C. C. A. 8); Ætna Ind. Co. v. J. R. Crowe, etc., Co., 154 F. 545, 567 (dissenting opinion) (C. C. A. 8); Midland Valley R. Co. v. Fulgham, 181 F. 91, 95 (C. C. A. 8); Philadelphia Cas. Co. v. Fechheimer (C. C. A.) 220 F. 401, 418, Ann. Cas. 1917D, 64; see Peoria Ry. Co. v. United States, 263 U. S. 528, 535, 536, 44 S. Ct. 194, 68 L. Ed. 427; The Maria Martin, 12 Wall. 31, 40, 20 L. Ed. 251; Board of Com'rs of Shawnee County v. Hurley, 169 F. 92 (C. C. A. 8); O'Neil v. Wolcott Min. Co., 174 F. 527, 535, 27 L. R. A. (N. S.) 200 (C. C. A. 8); Swig v. Tremont Tr. Co. (C. C. A.) 8 F.(2d) 943, 945.

While libel proceedings such as the one in the case at bar are likened in the statute (21 USCA § 14) to proceedings in admiralty, yet this similarity is largely confined to the seizure of the property by process in rem. The method of review·follows the practice in law actions. Four Hundred and Forty-Three Cans of Egg Product v. United States, 226 U. S. 172, 183, 33 S. Ct. 50, 57 L..Ed. 174; United States v. Seven Hundred and Seventy-Nine Cases of Molasses, 174 F. 325 (C. C. A. 8); United States v. Hudson Mfg. Co. (C. C. A.) 200 F. 956; Lexington, etc., Co. v. United States, 202 F. 615 (C. C. A. 8).

In view of these considerations, we think the question of res adjudicata presented by the claimant should not be reviewed by us.

We turn to the questions presented by the appellant.

▮ The purpose of the Food and Drugs Act is well established. In United States v. Lexington Mill Co., 232 U. S. 399, page 409, 34 S. Ct. 337, 340, 58 L. Ed. 658, L. R. A. 1915B, 774, the court, in its opinion, used the following language: "The statute upon its face shows that the primary purpose of Congress was to prevent injury to the public health by the sale and transportation in interstate commerce of misbranded and adulterated foods. The legislation, as against misbranding, intended to make it possible that the consumer should know that an article purchased was what it purported to be; that it might be bought for what it really was, and not upon misrepresentations as to character and quality. As against adulteration, the statute was intended to protect the public health from possible injury by adding to articles of food consumption poisonous and deleterious substances which might render such articles injurious to the health of consumers."

The position of the appellant is thus stated by its counsel in their brief: "In the instant case there is no charge against the name 'Bred Spred' as such, but against the adulteration of the article because it was mixed so as to conceal its inferiority, and the misbranding of the article because it was an imitation of another article, jam."

The statutory provision relied upon as to adulteration reads: *"Damage or inferiority concealed.—Fourth.* If it be mixed, colored, powdered, coated, or stained in a manner whereby damage or inferority is concealed." 21 USCA § 8.

It is apparent that two things were required to be proven in the case at bar, as respects adulteration: First, that Bred Spred was a damaged or an inferior food product, because one or more of its constituents was damaged or inferior; second, that it was mixed in a manner whereby the inferiority was concealed. There was no proof of either of these matters. There was no proof that Bred Spred contained any damaged or any harmful or deleterious substance. The word "inferiority" in the statute raises the question, What is the other member of the comparison? Or, in other words, the question, Inferior to what? The use of the word "damage" in connection with the word "inferiority" is significant. The word "damage" in this connection means that an ingredient has suffered a loss of strength or quality; the word "inferiority" means that an ingredient is, in the first instance, of low grade or quality. Nothing of this kind is shown by the evidence as to the elements going to make up Bred Spred. The strawberries, the sugar, the pectin, the tartaric acid, the water, were none of them, so far as the evidence shows, either damaged or of low grade; nor was the resulting product either damaged or of low-grade quality. The mere fact that the product contained fewer strawberries than some other product, e. g., jam, does not show that Bred Spred was inferior to jam; nor does it show that a comparison with jam was called for by the statute unless Bred Spred was being palmed off on the public as jam. No showing of this kind was made.

As to the matter of misbranding, the evidence clearly shows that the label contained no false or misleading statements; and, therefore, did not come within that definition of misbranding contained in section 10 of the statute. But the government contends

that misbranding, under section 10, includes imitation of some other article, and that, in this case, Bred Spred was an imitation of jam. Conceding, but without deciding, that the construction of the statute contended for by the government is correct, yet there is no evidence in the case that Bred Spred was an imitation of jam. Such imitation would, naturally, be disclosed by the tests of appearance, of taste, of smell. But, although there were introduced in evidence, in the trial court, physical exhibits consisting of jars of Bred Spred and jars of jam, these physical exhibits have not been brought by the government to this court. Nor is there other evidence in the case showing imitation. On such a record, we cannot hold that the ruling of the trial court was error.

One other matter is called to our attention by appellant. The government offered to show by one of its witnesses, a grocer, "that a product consisting of 17 parts of strawberry, 55 parts of sugar, 11-½ parts of water, one-fourth part of pectin and a small amount of tartaric acid, is an imitation of strawberry jam." Objection was made to this offer and the objection was sustained. We think there was no error in the ruling. The matter was not one calling for expert testimony, and especially so when the physical articles themselves were present in court.

We find no error in the record, and the judgment is accordingly affirmed.