No. 43,451

Coffee-Rich, Inc., *Appellee,* v. The Kansas State Board of Health: Evan Wright, Director, Food and Drug Division of the Kansas State Board of Health; Walter E. Fraese, Ralph Reed, M. D., Harold W. Powers, M. D., J. Alan Bradbury, D. V. M., V. A. Leopold, D. O., A. A. Fink, M. D., Thomas P. Butcher, M. D., Frank C. Carothers, D. D. S., Robert H. Hess, George E. Burket, Jr., M. D., As Members of the Kansas State Board of Health; Robert H. Riedel, M. D., As Executive Secretary of the Kansas State Board of Health and As State Health Officer of the State of Kansas, *Appellants.*

(388 P. 2d 582)

432

Opinion filed January 25, 1964.

*John W. Cooper,* Assistant Attorney General, of Topeka, argued the cause, and *William M. Ferguson,* Attorney General, *J. Richard Foth,* Assistant Attorney General, *O. R. Stites, Jr.,* Assistant Attorney General, and *Robert L. Lewis,* Assistant Attorney General, all of Topeka, were with him on the briefs for appellants.

*Elliott H. Levitas,* of Atlanta, Georgia, and *Milo M. Unruh,* of Wichita, argued the cause, and *Ellis Arnall,* of Atlanta, Georgia, *Warren W. Shaw,* of Topeka, and *Eward F. Arn, Richard F. Mullins, H. R. Kuhn* and *Louis W. Cates,* of Wichita, were with them on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The Kansas food, drug and cosmetic act authorizes the State Board of Health or any of its authorized agents to detain or embargo and bring a libel for condemnation against any article of food which is "misbranded" when the authorized agent finds or has reason to believe that such food is adulterated, or so misbranded as to be dangerous or fraudulent. (G. S. 1961 Supp., Ch. 65, Art. 6; 65-657, 65-658, 65-660, 65-665.) The act defines "misbranded" in G. S. 1961 Supp., 65-665, and the pertinent portion reads: "A food shall be deemed to be misbranded: (c) If it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word, imitation, and immediately thereafter, the name of the food imitated."

The appellants, the members of the State Board of Health and its duly authorized agents, acting pursuant to the act, embargoed approximately 878 quarts of Coffee-Rich and further threatened to detain or embargo additional quantities of Coffee-Rich in various places throughout the state wherever the product was offered for sale or sold. The seizure was on the ground that Coffee-Rich was suspected of being misbranded because the containers in which it was sold were not labeled as "imitation cream," or "imitation half-and-half." No claim was made that the product was misbranded in any other particular.

The plaintiff-appellee commenced this action to enjoin the appellants from enforcing the act and from embargoing or otherwise interferring with the marketing of the product on the ground that it was misbranded in violation of the act. (65-665 [c].)

It is unnecessary to summarize the pleadings except to say that issues were joined and trial was by the court which made findings

of fact and conclusions of law and entered judgment for the plaintiff. In view of contentions made by the appellants, we quote in full the findings of fact.

"1. Plaintiff manufactures a product known as 'Coffee-Rich.' It is offered for sale to wholesale food distributors throughtout the State of Kansas. It is sold primarily as a coffee enricher and whitener.

"2. Coffee-Rich is a manufactured product, not a natural one, the result of plaintiff's research and invention.

"3. The labels on the containers in which Coffee-Rich is sold accurately set out the ingredients of the product.

"4. Coffee-Rich is not an imitation of milk, half and half or cream. It contains none of the characteristic ingredients of any dairy product.

"5. To place on the labels of Coffee-Rich the word 'imitation' followed by the words 'milk,' 'cream' or 'half and half' would mislead and deceive the purchasing public and consumers.

"6. Prior to the filing of this suit defendants had detained, or embargoed, approximately 878 quarts of Coffee-Rich and threatened further detentions, or embargoes, of additional quantities of the product throughout the State of Kansas.

"7. The detention, embargo and destructon of Coffee-Rich by defendants has damaged and would damage the business, property and good will of plaintiff. It has, and would, constitute an arbitrary, unreasonable and discriminatory action by defendants."

The district court concluded as a matter of law that Section 65-665(c) is a valid legislative enactment, designed to protect the public, to prevent fraud and safeguard the public health; that Coffee-Rich was not misbranded under the act; that the acts of the appellants, past and present, were an unconstitutional application of a valid statute, and that a permanent injunction against all the appellants should be and the same was accordingly granted.

The evidence is summarized: Coffee-Rich is a manufactured product and not a natural product. It is a wholesome food, and is generally sold in quart containers which truthfully list the ingredients of the product. Immediately below the trade name on the containers appears the words "CONTAINS NO MILK OR MILK FAT," and immediately below those words are the words "A VEGETABLE PRODUCT." The product is basically a vegetable fat emulsion; it is artifically colored and its sole ingredients are vegetable fats, corn syrup solids, sodium caseinate, sodium citrate, carrogeenin, sorbitan, monastearate, polysorbate 60, pure beta carotene and water. Coffee-Rich contains no cream, no half-and-half, no milk, and no dairy products. The product was designed primarily to enrich the taste and lighten the color of coffee, although it is also suitable

for use on fruits, breakfast cereals, and desserts, and in soups and sauces.

As a vegetable fat product, Coffee-Rich is an original development, and it was never plaintiff's intention to imitate cream, or half-and-half, or any other dairy product. Rather, it intended to create and produce a product which would not have the inherent defects of cows' cream and other dairy products when used for purposes for which Coffee-Rich was designed. Cream and half-and-half are natural products. Coffee-Rich is distributed in a frozen state whereas dairy products are distributed in a liquid state. It does not taste like cows' cream, neither does it have the same aroma nor the same texture as cows' cream. The color of Coffee-Rich is yellowish white or possibly a tannish color and it is constant and never changes, whereas the color of cream varies at times during the year depending upon the diet of the cows producing the cream. It is a product uniform in flavor whereas cows' cream varies in flavor. It can be stored for longer periods than cream; it has less bacterial organisms than cream, and it will remain sweet and fresh longer than cream. Coffee-Rich contains no cholesterol, whereas cows' cream contains cholesterol, and it has a lower caloric value or content than cream. Coffee-Rich is resistant to "oiling off" and "feathering," whereas cream exhibits those tendencies.

The appellants first argue that Coffee-Rich is an imitation of cream, or half-and-half, and therefore subject to the labeling requirements of G. S. 1961 Supp., 65-665(c). The district court found, as a matter of fact, that it was not. Whether one product is an imitation of another is a question of fact. Cases relied upon by appellants uniformly hold this to be the law. "Imitation is initially a question of fact. . . ." (*United States v. 651 Cases, Etc.,* 114 F. Supp., 430, 431.) The word "imitation" as used in the statute (65-665 [c]) is not defined. Construing an identical federal statute (21 U. S. C. A., § 343 [c]) the Supreme Court of the United States, in *62 Cases of Jam v. United States,* 340 U. S. 593, 599, 95 L. Ed. 566, 71 S. Ct. 515, speaking through Mr. Justice Frankfurter, said: ". . . In that section Congress did not give esoteric meaning to 'imitation'. It left it to the understanding of ordinary English speech. . . ."

The parties are agreed that resort should be made to ordinary English definitions of the word "imitation" in making the initial investigation into the basic legal question presented. Various defini-

tions of the word "imitation" may be found in a variety of currently accepted encyclopedias of modern speech and language, and Webster's New International Dictionary, Second Edition, Unabridged, defines the word "imitation" as "That which is made or produced as a copy; an artificial likeness; a counterfeit; simulating something superior . . ." In *United States v. 651 Cases, Etc.*, supra, the court discussed whether the particular product there involved was an imitation of ice cream, and said:

"It is plain that no all-inclusive test of imitation can be prescribed. Resemblance and taste are elements as indicated in the case last above quoted 340 U. S. at page 599, 71 S. Ct. 515. Smell is included as one of the elements. U. S. v. 10 Cases, more or less, Bred Spred, 8 Cir., 49 F. 2d 87. The word connotes inferiority, 62 Cases of Jam v. United States, supra, 340 U. S. at page 600, 71 S. Ct. 515, in the sense that it is cheapened by the substitution of ingredients. Resemblance alone is not enough to constitute imitation. Baltimore Butterine Co. v. Talmadge, D. C., 32 F. 2d 904, affirmed, 5 Cir., 37 F. 2d 1014. It would seem that imitation is tested not by the presence or absence of any one element of similarity, but rather by the effect of a composite of all such elements. . . ." (p. 432.)

In holding that Chil-Zert was an imitation of chocolate ice cream the court pointed out that it contained the identical ingredients of chocolate-flavored ice cream in approximately the same proportions, "except that soy fat and soy protein are used therein in place of milk fat and milk protein;" that it was manufactured substantially in the same manner as chocolate ice cream, and with the use of similar machinery; that it was similar in taste, appearance, color, texture, body and melting qualities; that it had identical use and that "its composition differs only from ice cream in the substitution of a cheaper ingredient; namely vegetable oil in place of milk products."

At the outset we note that from the record in the present case there is (1) no identity in method of manufacture—in fact, one product involved is a natural one and not a manufactured one; (2) no identity of ingredients, and (3) no "substitution" of one ingredient for another.

The purpose of the Kansas act, with respect to misbranding, is to prevent fraud and deception and to make it possible that the consumer should know that an article purchased was what it purported to be; that it might be bought for what it really was and not upon misrepresentations as to character and quality. In that connection, the appellants list eleven elements of similarity to arrive at "a composite of all such elements" which they contend makes Coffee-Rich an imitation of cream, or half-and-half. We shall

examine each item, one by one. (1) Both, they say, are emulsions—but they fail to state that the basis of the manufactured Coffee-Rich emulsion is a vegetable oil, whereas the base of the natural cream, or half-and-half, emulsion is animal fat—a significant difference. (2) Both, they say, are homogenized—but they fail to state that any other products such as cutting oils, sheep dip, asphalt emulsions and many food products are also homogenized. (3) It is said both are pasteurized—but they fail to mention that orange juice, tomato juice, all fruit juices, wines and beer in cans are also pasteurized. Surely no one would contend that those items are imitations of dairy products. (4) It is said both are marketed in "milk-type" cartons—but, again, they fail to mention that orange juice, orange drinks, lemonade, tomato juice and apple cider are also marketed in similar containers. Again, surely, no one would contend that those items are imitations of dairy products. (5) It is claimed that both have identical uses—but how could this create an imitation? Illustrations of this point are legion: nylon and silk, saccharine and sugar, Crisco and lard, Naugahide and leather. Those products are not imitations—they are new scientific products having similar uses. (6) It is said the color of Coffee-Rich and the dairy product is similar —but the evidence is clear that the color of Coffee-Rich is constant and is designed to be such, whereas the color of cream and half-and-half is subject to change dependent upon the diet of the cows producing the cream. (7) It is said viscosity appears the same. We do not so read the record. (8) They say the smell is the same. Again, we do not so read the record. (9) It is said that the fat content of Coffee-Rich is somewhere between cream and half-and-half—the record so indicates, therefore it is an imitation of neither. (10) It is also said that the caloric content is somewhere between cream and half-and-half. The record so indicates, but, again, it is an imitation of neither. (11) The appellants say the difference in taste is slight. The record indicates that the taste is quite different. Coffee-Rich has a sweeter taste and is much more bland, while the dairy products have a "cowy" flavor.

To sum it up, the appellants contend the two products are indistinguishable without laboratory analysis. In support of the contention, they cite *United States v. Two Bags, Etc.*, 147 F. 2d 123, but that case involved an *adulterated* product and dealt with the question of completely banning from interstate commerce an inferior and adulterated product. It did not deal with the question of what a product was, whether it was an imitation and whether it was

properly or improperly labeled. On this point no claim is made that Coffee-Rich is adulterated, or that it is impure or in any manner injurious to the health of the consuming public. The Two Bags case simply serves no useful purpose in determining whether Coffee-Rich is an imitation cream, half-and-half, or, for that matter, any food product.

The appellants also cite the case of *62 Cases of Jam v. United States,* supra. That case does not touch the problem now before us. There it was conceded that the product in question was an imitation and was so labeled. The question was whether an admitted imitation product could be lawfully sold. It was held that since the product was unequivocally labeled as an imitation in conformity with federal requirements (21 U. S. C. A. § 343 [c]), and did not purport or represent to be the food product imitated, it was not mislabeled and was not subject to seizure and destruction by the federal administrator.

The question simmers down to this: Must a product which contains no milk products and which is a distinctive new product having uses similar to milk products be labeled an imitation milk product? We think not. Courts, common usage, and dictionary definitions are agreed that "imitation" connotes an inferior quality or watered-down version of the imitated item. The implication is that imitations contain some of the imitated substances and are of lesser quality or quantity. (*62 Cases of Jam v. United States,* supra.) The word "imitation" imparts more than mere resemblance or similitude. (*Midget Products, Inc. v. Jacobsen,* 140 C. A. 2d 517, 295 P. 2d 542; *Baltimore Butterine Co. v. Talmadge,* 32 F. 2d 904; *Carey v. Instantwhip Schenectady, Inc.,* 217 N. Y. S. 2d 253.) "Cream" and "imitation" are contradictory words. An imitation cannot be genuine; the two terms are antithetical. By implication or otherwise, Coffee-Rich contains no milk, cream or butter fat, nor any other characteristic or distinctive ingredient of cows' cream. The label expressly declares that it "contains no milk or milk fat," but instead, is "a vegetable product." Its taste is discernibly different from cows' cream. While it has uses similar to cream and does somewhat resemble cream, that alone does not make it an imitation. The fact that sometimes it is used as a substitute for cream or half-and-half without being declared to be such, would not justify its being condemned under the act. (*Baltimore Butterine Co. v. Talmadge,* supra.)

We reach the inescapable conclusion that Coffee-Rich is not an imitation of cream or half-and-half and that it is a new and distinct food product having characteristics unique unto itself. Coffee-Rich is no more an imitation of cows' cream, half-and-half, or any other dairy product than nylon is an imitation of silk, saccharine an imitation of sugar, or Crisco an imitation of lard. Those products, and Coffee-Rich, are separate, distinct, individual products developed as a result of modern scientific and technical advances and inventions. They are products *sui generis.* (*Midget Products, Inc. v. Jacobsen,* supra.) Paraphrasing *Baltimore Butterine Co. v. Talmadge,* supra, the state of Kansas is not committed to the proposition that nothing new and distinct is possible. To require the product here involved to be labeled "imitation cream," or "imitation half-and-half" would thwart the development of not only Coffee-Rich but also other distinctive new food products and would fall within the evils seen in *Baltimore Butterine Co. v. Talmadge,* supra, where it was said:

". . . The purpose of this law, it must be remembered, is not to protect other industries, even though they be so important as the dairy industry, but is to protect the consumers from deception or injury. If this be not the correct view, the state is committed to the use of creamery butter for all time for the purposes now used, and cannot use any substitute therefor derived from other sources, even though more economical, more palatable, and more popular." (p. 909.)

To the same effect is *Midget Products, Inc. v. Jacobsen,* supra. There the plaintiff proposed to manufacture and sell a product containing no milk or milk fats, the ingredients of which would be listed on the label stating that it contained no milk or milk fats. It was held to be not an imitation milk product and the plaintiff was not required to label the product as an imitation milk product. In the opinion it was said:

"In the present case, the evidence supports the finding that the product is not an imitation milk product, but it is a food product of its own distinctive character. The product does not contain any milk or milk fat. The ingredients of the product will be listed on the label, and the label will state that the product contains no milk or milk fat. To require the plaintiff, by reason of said sections of the Agricultural Code, to label its product an 'imitation' when it is not an imitation would be an unconstitutional application of said sections, and would be an unreasonable interference with plaintiff's property and business. . . ." (l. c. 522.)

Since criteria for finding an imitation are absent, Coffee-Rich is not an imitation milk product within the recognized principles of

law for determining what is an imitation either in fact or in law, and we conclude that the labeling requirements of Section 65-665 (c) cannot be applied to it.

The appellants next contend the district court erred in refusing to make certain requested findings of fact in determining whether Coffee-Rich was an imitation. They introduced evidence with respect to similarities in taste, color, use, containers, viscosity, fat content, caloric content, and contend the court's findings failed to state whether there were or were not such similarities in the eyes of the consuming public. No claim is made that the court's findings of fact were not supported by substantial evidence, or that the conclusions of law were not supported by the findings of fact.

Under our statute (G. S. 1949, 60-2921) the court is required, when requested, to make only "conclusions of fact." See *Alexa v. Alexa*, 108 Kan. 38, 46, 193 Pac. 1083; *Jernberg v. Evangelical Lutheran Home for the Aged*, 156 Kan. 167, 174, 131 P. 2d 691. In *Wagner v. Sunray Mid-Continent Oil Co.*, 182 Kan. 81, 318 P. 2d 1039, it was said: " . . . Cases which enunciate the duty of the district court under the statute hold that it is not required to make findings of evidentiary facts, only conclusions of fact, or ultimate facts. . . ." (p. 87.)

It has been said that when a court sits as a trier of facts and is asked to make findings of fact, it is presumed to make findings of fact upon all questions necessary to sustain the judgment rendered, and the facts found will be presumed by this court to embrace all the facts of the controversy established by the proof. (*Snodgrass v. Carlson*, 117 Kan. 353, 232 Pac. 241; *Black v. Black*, 123 Kan. 608, 610, 256 Pac. 995.)

Basically, there was one all-important ultimate question of fact in the case: Was Coffee-Rich an imitation cream or half-and-half? If so, it falls within the provisions of the act, and if not, the statute is inapplicable. Upon that basic issue the district court found, in finding No. 4, that Coffee-Rich was not an imitation milk, cream or half-and-half, and contained none of the characteristic ingredients of any dairy product. All else was evidentiary detail. See *Henderson v. Kansas Power & Light Co.*, 191 Kan. 276, 285, 380 P. 2d 443, and cases cited.

The appellants lastly argue that it was error to exclude the testimony of Keith Kappelmann, the manager of the State Office Building Cafeteria and the Myron Green Cafeteria, in Topeka. His

proffered testimony was that Coffee-Rich was served in both places from an ordinary Wyatt "cream" dispenser; that he had not advised his customers he was serving Coffee-Rich, and that he had no complaint from his customers. We think the evidence was irrelevant and immaterial. In the first place, the product was being served in a "dispenser," not from the "immediate container." (G. S. 1961 Supp., 65-656 [h], [i], [j]; 65-665 [c].) Secondly, the evidence was of no probative value except to show that Coffee-Rich may successfully be used for the purpose for which it was designed. What the product *is*, in fact, is not affected one way or the other by the manner in which it is dispensed. Calling nylon silk does not make nylon an imitation. We think the court properly excluded the evidence.

The district court heard all the evidence presented at the trial, including a visual examination of samples of cream, half-and-half, and Coffee-Rich, and made its conclusions of fact as required by the statute. In so doing, it is presumed that it considered all material facts and circumstances in arriving at its conclusions quoted above. There is substantial evidence to support the one basic ultimate fact in the case: that Coffee-Rich is not an imitation cream, or half-and-half, and the district court correctly concluded as a matter of law that the product was not subject to the labeling requirements of G. S. 1961 Supp., 65-665(*c*).

The judgment is affirmed.

JACKSON, J., not participating.