**FEDERATION OF HOMEMAKERS,**
**Plaintiff,**

v.

**Alexander SCHMIDT and Food and Drug**
**Administration, Defendants.**

**Civ. A. No. 2113–73.**

United States District Court,
District of Columbia.

Oct. 29, 1974.

Act, 21 U.S.C. § 343(c). Plaintiff asks the Court to declare the regulation null and void and to issue a mandatory injunction requiring the agency to revoke the offending regulation and to cease its enforcement. The case is now before the Court on the parties' cross-motions for summary judgment. Both sides having filed virtually identical statements of material facts as to which there is no genuine issue, the case is ripe for disposition on the pending motions.

I.

Section 403(c) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(c) provides:

A food shall be deemed to be misbranded   .   .   .

(c) If it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word "imitation" and immediately thereafter, the name of the food imitated.

The difficulty in enforcing this provision arises out of the uncertain meaning to be accorded the term "imitation". The term is not defined by either the Act or the Congressional Reports comprising the legislative history.

Realizing the ease with which modern technology can simulate certain foods using quite different ingredients than those found in the original,[1] the FDA proposed a new regulation which would accentuate "nutritional inferiority" as the primary, and in some cases the sole, determinant of an "imitation" product. Notice of the proposed rule was published on January 15, 1973. 38 Fed.Reg. 2138. Plaintiff, among others, responded negatively to this interpretation of "imitation", contending that the definition was inconsistent with the statute's purpose of outlawing the misbranding of all spurious foods, whether inferior or superior in nutritional value to the original. On August 2, 1973, the FDA published the final regulation with substantially the same form and content as the

Arthur D. Koch, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Arnold T. Aikens, Asst. U. S. Atty., and Thomas G. Corcoran, Jr., Asst. U. S. Atty., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

WADDY, District Judge.

Plaintiff, a District of Columbia nonprofit corporation, brings this action for declaratory and injunctive relief against the Food and Drug Administration (FDA) and Alexander Schmidt, the Commissioner of Food and Drugs. Plaintiff alleges that the FDA has promulgated a regulation regarding the misbranding of food, 21 C.F.R. § 1.8(e), which is contrary to section 403(c) of the Federal Food, Drug, and Cosmetic

---

1. Previous litigation has involved imitations of such products as ice cream, butter and jam.

proposal (although the agency did note and respond to the 236 comments it had received). The regulation as adopted, 38 Fed.Reg. 20702–20704, 21 C.F.R. § 1.-8(e) provides as follows:

(e) Under the provisions of section 403(c) of the Federal Food, Drug and Cosmetic Act, a food shall be deemed to be misbranded if it is an imitation of another food unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated.

(1) A food shall be deemed to be an imitation and thus subject to the requirements of section 403(c) of the act if it is a substitute for and resembles another food but is nutritionally inferior to that food.

(2) A food that is a substitute for and resembles another food shall not be deemed to be an imitation provided it meets each of the following requirements:

(i) It is not nutritionally inferior to the food for which it substitutes and which it resembles.

(ii) Its label bears a common or usual name that complies with the provisions of § 102.1 of this chapter and that is not false or misleading, or in the absence of an existing common or usual name, an appropriately descriptive term that is not false or misleading. The label may, in addition, bear a fanciful name which is not false or misleading.

(3) A food for which a common or usual name is established by regulation (e. g., in a standard of identity pursuant to section 401 of the act, in a common or usual name regulation pursuant to part 102 of this chapter, or in a regulation establishing a nutritional quality guideline pursuant to Part 100 of this chapter), and which complies with all of the applicable requirements of such regulation(s), shall not be deemed to be an imitation.

(4) Nutritional inferiority includes: (i) Any reduction in the content of an essential nutrient that is present in a measurable amount, but does not include a reduction in the caloric or fat content provided the food is labeled pursuant to the provisions of § 1.17, and provided the labeling with respect to any reduction in caloric content complies with the provisions applicable to caloric content in Part 125 of this chapter.

(ii) For the purpose of this section, a measurable amount of an essential nutrient in a food shall be considered to be 2 percent or more of the U.S. RDA of protein or any vitamin or mineral listed under § 125(b) per average or usual serving, or where the food is customarily not consumed directly, per average or usual portion, as established in § 1.17.

(iii) If the Commissioner concludes that a food is a substitute for and resembles another food but is inferior to the food imitated for reasons other than those set forth in this paragraph, he may propose appropriate revisions to this regulation or he may propose a separate regulation governing the particular food.

## II.

The FDA defends the regulation by noting the difficulty in devising and enforcing an objective definition of "imitation" which will take account of both the complexities of the food market and Congress' primary concern with protecting the consumer from inferior products. Defendants cite examples of artificially sweetened, enriched or vitamin-fortified foods for which it would be inappropriate to affix the designation "imitation", because the term connotes an inferiority which is not necessarily applicable to all such products. Use of the term on a label might discourage consumers from purchasing nutritionally equivalent, substitute foods because of an unfounded fear that they are getting a product of lesser quality. A preferable procedure, it is asserted, would be to require detailed, descriptive labeling which indicates the substitution or re-

duction of certain ingredients (e. g., "artifically sweetened applesauce" or "lowfat cottage cheese"). In some instances a product, even though a copy of another, should be marketed as a distinct product with its own identity. A prime example of such is oleomargerine.

Plaintiff's complaint raises the same objections to this regulation as those submitted in its response to the agency's initial proposal. In answer to the purported dilemma over the categorization of enriched and fortified foods, plaintiff suggests that, instead of redefining "imitation", the agency should exercise its authority under section 401 of the Act to devise appropriate standards of identity which would encompass these types of food.[2] For other types of imitation foods, especially where there is no standard of identity, plaintiff proposes that the product take on a unique name with a clear designation on the label that it is an imitation of another food. In challenging the mechanics of this new regulatory policy, plaintiff also argues that the definition of "imitation" incorporated in the regulation is incompatible with the Supreme Court's holding in 62 Cases of Jam v. United States, 340 U.S. 593, 599, 71 S.Ct. 515, 95 L.Ed. 566 (1951), that the term should not be given an esoteric interpretation, but accorded the meaning found in "everyday English speech." Plaintiff directs the Court's attention to the holding in United States v. 651 Cases, More or Less, of Chocolate Chil-Zert, 114 F.Supp. 430, 432 (N.D.N. Y.1953) as providing the only legally permissible interpretation of this elusive term:

It is plain that no all-inclusive test of imitation can be prescribed. Resemblance and taste are elements as indicated in . . . [62 Cases of Jam v. United States, 340 U.S. 593, 71 S. Ct. 515, 95 L.Ed. 566 (1951)]. Smell

is included as one of the elements. U. S. v. 10 Cases, more or less, Bred Spred, 8 Cir., 49 F.2d 87. The word connotes inferiority, 62 Cases of Jam v. United States, supra, 340 U.S. at page 600, 71 S.Ct. 515, in the sense that it is cheapened by the substitution of ingredients. Resemblance alone is not enough to constitute imitation. Baltimore Butterine Co. v. Talmadge, D.C., 32 F.2d 904, affirmed, 5 Cir., 37 F.2d 1014. It would seem that imitation is tested not by the presence or absence of any one element of similarity, but rather by the effect of a composite of all such elements.

### III.

■ Unless there are compelling indications to the contrary, the construction of a statute by the agency charged with its enforcement is entitled to great deference. Red Lion Broadcasting v. FCC, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). If the FDA's interpretation of the misbranding provision at issue here is not clearly inconsistent with the language of the statute, as interpreted by the courts or by Congress when it passed the legislation, then this Court should accept the agency's judgment.

Plaintiff would have us infer from the *Jam* and *Chil-Zert* cases that the agency's reliance upon the single criterion of nutritional inferiority is contrary to law and that it is obliged to consider all factors relevant to the simulation of food products. The Court disagrees.

Although the legislative history of section 403 of the Act does not define "imitation", there is a discussion in both the Senate and House Reports of the related statutory provision for the crea-

2. Section 401 provides: "Whenever in the judgment of the Secretary such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any

food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container . . .

tion of standards of identity pursuant to section 401:

> The absence of definitions and standards of identity has seriously handicapped the effective operation of the present law in maintaining the integrity of our food supply. The provisions of the present law, as well as those of this bill, dealing with so-called "economic adulteration", that is, the cheapening of foods either through lessening the quantities of valuable constituents or through the substitution of cheaper constituents, require definitions and standards whereby the article can be judged.[3]

A similar theme was sounded when the House Report discussed the applicability of § 401 to canned goods:

> This section also extends to all foods the present law applicable to canned foods. Under this a single reasonable standard of quality can be prescribed for any food and if the product falls below this standard it must be labeled as substandard. This provision of the present law was advocated by the canning industry in order to insure appropriate labeling of low-quality materials which too frequently were discrediting all commodities of the same class.[4]

Addressing itself to the issue of standards of identity, in the context of an enriched food product, the Supreme Court restated Congress' concern that the consumer be protected from "economic adulteration" by which the manufacturer creates a product which, "although not in itself deleterious, [is] inferior to that which the consumer expected to receive when purchasing a product with the name under which it was sold." Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 230, 63 S.Ct. 589, 596, 87 L.Ed. 724 (1943). Subsequently, in the *Jam* case, the Court reiterated that "[s]ection 403(g) was designed to protect the public from inferior foods resembling standard products but marketed under distinctive names." 340 U.S. at 600, 71 S. Ct. at 520. These cases, when read in conjunction with the previously cited Congressional Reports, compel the conclusion that the primary purpose of both subsections 403(c) and (g) is to protect the consumer from the unwitting purchase of inferior products.

The Supreme Court's advice that "imitation" be given its ordinary meaning provides no support for plaintiff's position. "Imitation" is defined (as an adjective) in Webster's New International Dictionary, Second Edition, as follows: "Simulating something superior . . . ."[5] The negative connotation attached to the spurious product has been recognized by the courts in the *Quaker Oats, Jam* and *Chil-Zert* cases.[6]

Technology has made it easier to concoct artificial and substitute foods. Concommitantly it has complicated the task of determining what constitutes an imitation. It is not axiomatic that a food which resembles another is an inferior product. As defendants note, many substitute foods, although nutritionally equivalent to the original, may be ignored by the consumer if it is marketed with the simplistic label "imitation", with its implied inferiority. Plaintiff may be correct that the better course is to expand the use and applicability of standards of identity to encompass the newer products on the market which are not nutritionally inferior, but which never-

3. S.Rep.No.361, 74th Cong., 1st Sess. 10 (1935).

4. H.R.Rep.No.2139, 75th Cong., 3d Sess. 5 (1938).

5. See also Coffee-Rich, Inc. v. Kansas State Board of Health, 192 Kan. 431, 388 P.2d 582 (1964), in which the court applied the same definitional approach to a state law identical to subsection § 403(c).

6. Plaintiff's reading of the *Chil-Zert* decision would seem to be strained beyond the facts of that case. By proposing a practical guideline for judicial interpretation of the term "imitation", the Court was not holding that the FDA was statutorily barred from adopting its own alternative regulation.

theless are copies of another food. This Court's function, however, is not to pass value judgments on competing proposals for the marketing and labeling of foods.

In an area greatly affected by technological advances, and governed by a vague statutory provision, the FDA has attempted to formulate a policy which restricts the term "imitation" to products which are objectively inferior in nutritional value, in conjunction with promoting more detailed and descriptive labeling of all products. The efficacy of this policy is not before the Court. The new regulation is consistent with the wording of the statute and with what appears to be Congress' intent. The case law does not support plaintiff's contrary contention. For these reasons the regulation should be upheld and defendants' motion for summary judgment hereby is granted.